# CHARLESTON.

## State v. King et al.

Submitted November 24, 1899—Decided February 7, 1900.

1. Forfeiture—*Taxes—Payment—Redemption.*

   Where a suit is brought in the name of the State for the purpose of subjecting a tract of land to sale for the benefit of the school fund, the former owner of any such tract at the time of the forfeiture shall, if known, be made a defendant; and at any time during the pendency of the suit, and before a decree for the confirmation thereof has been entered by the court, and upon full and satisfactory proof that at the time the title to said land vested in the State he had a good and valid title thereto, the court may, by a proper decree, permit such former owner, upon the payment into court or to the commissioner of school lands of the costs, taxes, and interest properly chargeable thereon, to be fixed by the court in its decree, to redeem the real estate mentioned in his petition; but the taxes and interest properly chargeable thereon must be ascertained by proof, and not by mere conjecture.   (pp. 441-442).

2. Commissioner's Report—*Exceptions—Error.*

   If a comissioner's report is not excepted to, it is taken to be correct as to adult parties, and will not be examined by either the lower or appellate court, and no advantage of any error therein can be taken unless it be error apparent on the face of the report; but such an error can be taken advantage of in either court at the hearing without exceptions. (pp. 445-446).

3. Decree—*Error—Parties.*

   In a proceeding of this character to sell three hundred and twenty-seven thousand acres, part of a five hundred thousand-acre tract lying partly in the state of Virginia, it is error to allow the former owner, upon the payment of the taxes and interest found to be due on ten thousand acres by a commissioner, to redeem the entire three hundred and twenty-seven thousand acres, providing that such redemption shall not affect the rights that any person not a party to the suit might have under the provisions of section 3 of Article XIII of the Constitution of the State.   (p. 447).

4. Forfeiture—*Redemption—Taxes—Payment.*

   In order to redeem the undivided portion of a large tract

of land from forfeiture to the state for nonentry and non-payment of taxes, such portion should be carefully described and accurately located by the person seeking redemption, that the court may properly ascertain and fix in its decree the costs, state, county, and district taxes, and interest thereon, chargeable against the same, the prepayment of which is necessary to consummate such redemption. (p, 451).

Appeal from Circuit Court, Wyoming County.

Suit by the State against Henry C. King and others for the sale of land forfeited for nonpayment of taxes. From a decree allowing defendants to redeem the land, the State appeals.

*Reversed.*

E. P. RUCKER, ATTY. GEN., CAMPBELL, HOLT & CAMP-BELL, BROWN, JACKSON & KNIGHT, and VINSON & THOMPSON for the State.

M. F. STILES, E. L. BUTTRICK, FLOURNOY, PRICE & SMITH, and MOLLOHAN & MCCLINTIC, for appellees.

. ENGLISH, JUDGE:

This was a suit in equity, instituted in the circuit court of Wyoming County on the 7th of May, 1894, by the State of West Virginia, against Henry C. King and others, having for its object the sale of five hundred thousand acres of land for the benefit of the school fund, which tract was claimed by said King and others, and was situated partly in Wyoming and partly in Logan and Mingo Counties. This land was patented to Robert Morris, assignee of Wilson Cary Nicholas, on June 23, 1705, or so much as lies within this State. This suit, and the proceedings therein, are claimed to be in pursuance of the requirements and provisions of chapter 105 of the Code, and the act amending it passed February 23, 1893. An original and three amended bills were filed in attempting to make the proper allegations and the proper parties. On June 25, 1896, said King filed a petition and answer, claiming to be the owner of the land, denying that any portion had become forfeited for nonentry or nonpayment of taxes, and praying that, in the event it should be held to be forfeited, he might be permitted to redeem the same. Alexander McClintock, not a party to the suit, at the same time filed a petition objecting,

to King's prayer to redeem, objecting to the jurisdiction of the court, and asserting a claim to a tract which interlocked with said five hundred thousand acre tract, but no action was taken with reference thereto which is claimed as error in this cause. An order of publication, stating the object of the suit, was published as to certain absent defendants, and on September 27, 1894, the cause was referred to a commissioner, with instructions to inquire into and report upon the matters and things set forth in plaintiff's bill, and especially the amount of taxes and interest due and unpaid on that part of the land lying in the State of West Virginia; in whom the legal title was at the time of the forfeiture, if the fact can be ascertained; in whose name, and for what cause, the land was forfeited, and the facts in relation thereto; what portion, if any, is claimed by any person under the provisions of section 3 of Article XIII. of the Constitution of the State; the facts in relation to every such claim, and boundaries thereof; also to report whether or not any of said land has been sold by the State in any proceeding for the sale of school lands, and whether the taxes have been regularly paid since such sale; also to ascertain the proximate quantity within the county of Wyoming; and he was required to give the notice required by section 8 of chapter 24 of the Acts of 1893, by publishing the same in the weekly newspaper of that county. Said section also requires that such notice shall be posted at the front door of the court house, at least four weeks before proceeding to discharge the duties under such decree, of the time and place at which he will so proceed; and such notice so published and posted shall be equivalent to personal service on all parties to the record in such suit, and on all unknown owners and claimants of any tract or parcel of land mentioned in the bill, or any part thereof.

The commissioner, in his report, says that, after giving the notice required by said decree (which only required him to publish the notice in a newspaper), he proceeded to investigate the matter and things required by said decree, and reports, among other things, that three thousand acres of said survey lie in Wyoming County, West Virginia, besides the junior patents, which are protected under section 3 of Article XIII. of the Constitution of this State: that

said five hundred thousand acre survey was redeemed in the circuit court of Wyoming County, and the taxes paid by Robert E. Randall, trustee of the estate of James Swann, but the trustee failed to cause said land to be entered on the assessors' books for 1884, or for any year from 1884 to the date of the said report; that in June, 1886, John R. Reed was appointed, by the United States circuit court for the district of West Virginia, trustee of said Swann estate to succeed said Randall, trustee, and the legal title to said land was in said Reed, trustee, at the date of its forfeiture; that the same is forfeited for the owner failing to cause it to be entered on the assessors' land books of Wyoming County for taxation; that said land has not been assessed for the years from 1884 to 1894, inclusive; and that the same is liable to sale for the benefit of the school fund.

The defendant H. C. King filed his answer to said bill which was also treated as a petition, in which he claimed that he had a complete and perfect title to said five hundred thousand acre tract superior to all other claimants, and alleged that, if it should be adjudged forfeited to the State of West Virginia by reason of the non-assessment thereof on the assessors' land books of the several counties wherein the same may lie, then a proper order should be made in the cause allowing him to redeem said land from said forfeiture by the payment into court or to the commissioner of school lands of Wyoming County all the interest, taxes, and damages due thereon. On the 30th of September, 1897, a decree was entered in said cause, holding that said King had the right, superior to all other claimants, to redeem the land by paying the taxes chargeable thereon, with interest and costs of said suit; the cause having been heard in open court upon the report of Commissioner D. A. Robertson, to whom the same was theretofore referred, and upon all the pleadings, evidence, depositions, and papers therein. And said decree recited that, said King having paid to J. R. Robertson, commissioner of school lands of Wyoming County, as admitted by said Robertson in open court, the sum of two thousand one hundred and ninety-eight dollars and sixty-five cents and interest due on the portion of Morris five hundred thousand acre grant in West Virginia, and eight hundred and seventy-one

dollars and forty-three cents, costs of this suit, and also twenty dollars attorney's fee, which total sum of three thousand and ninety dollars and eight cents was fixed by the court as the amount of costs, taxes, and interest chargeable upon said land up to and including the year 1897, said King had the right superior to all others to redeem said land and decreed and declared that portion of said five hundred thousand acre tract which lies in the State of West Virginia, described in said decree, fully redeemed, and all forfeitures of said land taxes and interest heretofore charged or chargeable thereon released and discharged, but provided that said redemption should not affect the rights of any one not a party to the suit under the provisions of section 3, Article XIII. of the Constitution of West Virginia, and from this decree the State obtained this appeal.

Now, in examining the questions raised in this case we are met at the threshold by the question suggested by counsel for the appellees as to the right of the State to an appeal.    It is contended that the decree appealed from was, in essence and effect, a consent decree on the part of the State, and its provisions were afterwards accepted; that the State brought the suit, and obtained the relief it sought; that an acceptance of the provisions of the decree without objection was a waiver of any right of appeal.    This was a proceeding under chapter 24 of the Acts of 1893, as amendatory of chapter 105 of the Code, for the sale of the land mentioned as forfeited for nonentry on the assessors' books of several counties named in the bill; and, so far as the proceeding applies or has reference to the requirements of the statute which must be complied with before a sale of such land can be made, it is incumbent on the State to proceed regularly in accordance with the statute, but when the former owner, under section 17 of chapter 24 of the Acts of 1893, files his petition for the purpose of redeeming the land, the duty devolves upon him to show himself not only entitled to redeem by reason of his ownership at the time of the forfeiture, but he must pay into court or to the commissioner of school lands the costs, taxes, and interest properly chargeable thereon, to be fixed by the court in its decree.    From the language of this statute it is apparent that, in order that the owner

may properly redeem the land sought to be sold, he must pay costs, taxes, and interest as fixed by the court in its· decree. We cannot say that the court has the right arbitrarily to fix the amount without proper investigation. Neither will it do to approximate the amount of taxes and interest properly chargeable by guesswork; nor will the payment of a lump sum into the hands of the commissioner of school lands or into court constitute a redemption of the land, unless it be the interest properly chargeable thereon; and it was error in the court to declare the land redeemed without properly fixing and ascertaining the amount of money to be paid. If this was error, it was one of which the State could complain, and could not ·be considered a consent decree, because it was the action of the court, and nothing on the face of the decree shows that the State assented thereto. It is true that it does not appear that the state's counsel made any objection to the action of the court in allowing said King to redeem; yet, if the record discloses error to the prejudice of the State, it has the right to appeal. Section 22 of chapter 24 of the Acts of 1983 allows appeals from˚ the decrees, orders, and judgments of the circuit court rendered under the pro-· visions of said chapter to be taken as provided in chapter 135 of the Code. Now, it is shown by an exhibit filed with the deposition of W. D. Sell that of this land designated as five hundred thousand acres about twenty-four thousand were located in McDowell county, seventeen thousand in Wyoming County, eighty-six thousand in Mingo County, and two hundred thousand in Logan County. On September 27, 1894, as stated before, the cause was referred to commissioner J. R. Robertson, who was particularly instructed to ascertain the amount of the taxes and interest due and unpaid upon that part of the land in the bill mentioned which lies in the State of West Virginia, in whom the legal title was at the time of forfeiture, etc. Section 8 of chapter 24 provides that, when a decree of reference is made in any such suit, the commissioner, before proceeding to the discharge of his duties, shall give notice to all the parties to such suit, and to all unknown owners and claimants of the lands, or any part of them, mentioned in the bill, by publication in some newspaper printed in the

county in which the suit is brought, and prescribes the
form of the notice, which is required to be published once
in each week for four successive weeks, and also posted at
the front door of the court house of said county at least
four weeks before proceding to discharge his' duties under
the decree, of the time and place at which he will so pro-
ceed, and that such notice, when so published and posted,
shall be equivalent to the personal service thereof on all
the parties to the record in such suit, and on all unknown
owners and claimants of any tract or parcel of land men-
tioned in the bill, or any part thereof. The importance of
properly publishing and posting this notice is at once ap-
parent, because, when properly executed, it is made equiv-
alent to personal service, not only on all the parties to the
record, but on all unknown owners and claimants of any
tract mentioned in the bill; and yet this commissioner pro-
ceeded to execute the requirements of the decree of refer-
ence in this case, so far as appears from the record, with-
out having posted his notice at the front door of the court
house, as required by statute, which duty and prerequisite
must be regarded of equal, if not greater, importance than
the publication in a newspaper in a case of this character,
where many parties in the county seem to have been inter-
ested.

On June 25, 1896, another decree of reference was made
to said J. R. Robertson, commissioner, and, he having re-
signed March 27, 1897, the cause was referred to D. A.
Robertson, with direction to carry out the requirements
of the decree referring the cause to said J. R. Robertson,
and he, after publishing notice for four consecutive weeks
in the Wyoming Herald, but without such notice at the
front door of the court house of said county as required by
statute, proceeded to take, state, and report an account in
pursuance of the requirements of said decree of reference,
and, among other things, reported that about ten thousand
acres of said land was unclaimed by junior claimants, and
situated in West Virginia,—in McDowell eight hundred
acres, in Mingo one thousand, seven hundred acres, in Lo-
gan five thousand, seven hundred, and in Wyoming one
thousand, eight hundred; that there are a great number
of small patents and portions of said five hundred thousand-

acre survey that are claimed under section 3 of Article XIII of the Constitution of this State, but that it would require a number of years, and from ten thousand dollars to twenty thousand dollars to pay the expenses of getting the boundary lines of each one of said junior claimants' land, and showing the title of same; and that there was no money at his disposal, and it was impractible, if not impossible, for him to execute that portion of said decree of reference. He then proceeds to trace the title of said land from the commonwealth to Henry C. King; then ascertains the taxes and interest on the whole of the land not claimed by junior claimants from 1884 to 1897, inclusive, to be two thousand, one hundred and ninety-eight dollars and sixty-five cents. On the 30th of September, 1897, the cause was heard upon this report of D. A. Robertson, which was made the basis of the decree holding that the said H. C. King had the right superior to all others to redeem said land, and reciting the fact that said King had that day paid to the commissioner of school lands the sum of three thousand and ninety dollars and eight cents, declared said land redeemed, and fixed the boundaries of the portion of the tract in West Virginia in accordance with the survey made by W. D. Sell in 1895. The report of J. R. Robertson, before mentioned, was not acted upon in entering the decree complained of, but the record discloses the fact that the notice given by him before proceeding to take the required account was given in the same manner, and no notice was posted at the front door of the court house, and what has been said with reference to the notice given by J. R. Robertson before taking the first account applies to the action of D. A. Robertson with equal force. The language of section 8 is positive: "Such notice when so published and posted shall be equivalent to personal service, not only on all the parties to the record in such suit and all unknown owners and claimants of any tract or parcel of land mentioned in the bill or any part thereof." This is a statutory proceeding, and the statute must be strictly pursued in its requirements before land forfeited to the State can either be sold or redeemed. A commissioner's report appears to be necessary under chapter 24 of the Acts of 1893. Section 8 provides for the reference

and form of the notice, which, when properly given, shall be equivalent to personal service, not only on the parties to the record, but on all unknown owners and claimants. Section 9 provides for the commissioner's report, and section 10 for the hearing on the report. The first commissioner to whom this cause was referred took several depositions, and made an ineffectual attempt to comply with the requirments of the decree, ascertaining that about three thousand acres of the five hundred thousand acre survey was in Wyoming county, and ascertained the taxes and interest on said three thousand acres from 1884 to 1894, inclusive, at one thousand and fifteen dollars and two cents, and undertook to give the boundaries of certain lands which were included in said survey, the titles to which were protected under the Constitution of the State; and concluded by stating that he was unable to complete his report as to that portion of said five hundred thousand acres lying in Logan and McDowell Counties.

Now. while it is true that this report was ignored and not acted upon in the decree, it serves to show the uncertainties to the amount of land in Wyoming County declared redeemed by this decree. This commissioner having resigned, his successor, D. A. Robertson, reported that about ten thousand acres of said land is unclaimed by junior claimants, one thousand, eight hundred acres of which is located in Wyoming County, and the residue in McDowell, Mingo, and Logan; that a great number of small patents and portions of said five hundred thousand acres is claimed under section 3, Article XIII, of the Constitution, but that it would require years, and from ten thousand dollars to twenty thousand dollars, to pay. for obtaining the boundary line of each of said junior claimants' land. He further reports that under the circumstances he has been obliged to determine the quantity of land not claimed under title adverse to said Robert Morris' title from such data and information as he could obtain to reach a practical basis for computing the taxes on said unclaimed lands, and has considered the situation and condition of said land, finding it to be situated largely along the mountains and ridges, etc. On consideration of these facts the commissioner found the total amount of taxes

and interest chargeable to said land from 1884 to 1897 to be two thousand, one hundred and ninety-eight dollars and sixty-five cents, and upon the payment of this amount due upon ten thousand acres, with costs, fees, etc., said King was allowed to redeem said land so far as the same lies in the State of West Virginia, and so far as title thereto is in this State, and proceeds to fix the exterior boundaries thereto according to a resurvey made in 1895 by W. D. Sell. Now, let us see upon what "data and information" Commissioner D. A. Robertson bases his conclusion as to the number of acres and location of the land on which the appellant was entitled to receive taxes and interest in redemption of same. It is true that the commissioner took depositions, but was the testimony elicited such as a commissioner should base his report upon in a case of this character under the requirements of the decree? The witness, Sell, was first examined by him, and when asked to approximate, as near as he could, the number of acres of the land within the exterior lines of said five hundred thousand acre tract not claimed by the junior claimants, and how much of same is situated in the counties of McDowell, Mingo, Logan, and Wyoming, replied: "From my knowledge of the survey and of the country and claimants therein, I estimate that there are in round numbers, ten thousand acres in the four counties above named. That in McDowell is eight per cent., in Mingo seventeen per cent., in Logan fifty-five per cent., and Wyoming eighteen per cent." But this same witness, when asked how long it would take, and what it would cost, to ascertain the number of tracts and the boundaries thereof within said survey claimed under section 3 of Article XIII. of the Constitution, replied that the question was hard to answer, and that it could not be done in less than seven years, at a cost of twenty thousand dollars. Levi Blankenship was also examined, and estimates that there were three thousand acres, or more, in the bounds of Wyoming County, after deducting all junior patents; and again we find the witness Sarver says he has made a careful estimate of the amount of said land, and finds that there is between eleven thousand and twelve thousand acres in Wyoming County, and that from two thousand to three thousand acres thereof are covered by

junior patents. Now, how could the commissioner reconcile this testimony and reach the conclusion he did? Sell fixes the number of acres in the four counties at ten thousand, Blankenship fixes the number in Wyoming at three thousand after deducting junior patents, and Sarver estimates such land in Wyoming at eleven thousand to twelve thousand acres, less two thousand or three thousand covered by junior patents. The discordance of this testimony is apparent when attention is called to the fact that the last-named witness estimates that in the county of Wyoming alone there are as many acres of this tract subject to redemption as Sell estimates in the four counties, while witness Blankenship locates one-third of the land so subject in the county of Wyoming.

Was the commissioner, in view of this conflicting testimony, warranted in fixing the amount of land on which taxes were to be paid at ten thousand acres, to entitle the petitioner, King, to redeem? And, if he was so warranted, can we hold that by paying taxes on ten thousand acres (which taxes were ascertained by said commissioner upon some theory known only to himself, and which his report fails utterly to elucidate or explain) the court was authorized to decree and declare that portion of said five hundred thousand acres which now lies in the State of West Virginia, and is shown to contain three hundred and twenty-seven thousand, so far as the title thereto is vested in this State, fully redeemed, and all forfeitures of said land and taxes and interest heretofore charged or chargeable thereon released and discharged, providing that said redemption should not affect the rights that any person not a party to the suit might have, if any, under the provisions of section 3, Article XIII., of the Constitution of West Virginia? I cannot think the statute ever intended that forfeited land should be redeemed in this manner upon mere conjecture. This decree, as I understand it, allows said King to redeem all of said five hundred thousand acre tract included in the bounds of West Virginia by paying the taxes estimated to be due on ten thousand acres, the title to which was vested in the State, excepting such portions as parties were entitled to hold under section 3 of Article XIII. of the Constitution; but the number of acres held by

such parties and entitled to immunity under the constitution was undetermined by this decree. Neither were the names of the parties or number of acres so held by them, respectively, in any manner ascertained by the decree, and we are unable to say what portion of these lands are claimed under said section of the constitution, but they are asserting claims they would be unable to sustain should suit be brought against them by said King. Some of those parties might be able to. sustain their claims, and others not, and yet King, by paying the supposed or approximated taxes on ten thousand acres, was allowed to fully redeem all of the Morris survey lying within the bounds of this State, so far as the title thereto is in the State; so that under this decree there is no certainty that the State has received what she was entitled to by way of redemption of these lands. To show that it was never contemplated by the legislature that questions of title, possession, or boundary arising under chapter 24 of the Acts of 1893 should be determined by conjecture, section 18 of that chapter provides: "In every such suit brought under the provisions of this chapter, the court shall have full jurisdiction, power and authority to hear, try and determine all questions of title, possession and boundary which may arise therein; and regardless of. the evidence, if any, already taken therein, may in its discretion direct an issue to be made up and tried at its bar as to any question, matter or thing arising therein, which in the opinion of the court is proper to be tried by a jury." Why, the necessity of this provision, if the question arising could be determined by the conflicting opinions of two or three witnesses, and when the opinion of the witness on whose testimony the report is based, and the amount of taxes required for redemption in the decree, was only asked to approximate as near as he could the number of acres there were within the bounds of said five hundred thousand acre survey, and estimated the same in round numbers at ten thousand acres in the four counties of McDowell, Logan, Mingo, and Wyoming, locating it along the tops of ridges in the heads of hollows and creeks. From this description, where would the assessor find it for future assessment and taxation? Surely, it was never intended by the legislature that a party filing his pe-

tition to redeem a portion of a tract, describing such portion as the title thereto is vested in the State, should be allowed to redeem a tract of three hundred and twenty thousand acres by paying the taxes on ten thousand acres thereof without locating said ten thousand acres otherwise than finding it to be situated largely along the mountains and ridges. As stated, it is claimed that the location of the land is not more definitely fixed and its boundaries ascertained by reason of the time that would be required and the expense that would attend a proper ascertainment of the necessary facts on which to properly determine the amount ot taxes due the State, the payment of which is a condition precedent to the redemption. This, we say, is no excuse. To constitute a proper redemption, the taxes due the State must be properly ascertained and paid.

It is claimed the State is estopped by reason of the fact that its attorney received the amount fixed by the court. This, however, cannot be so, if the amount required for the redemption of the land was fixed by the court improperly. It is true, the commissioner's report was not excepted to by counsel for the State, but that does not preclude the State from sustaining her objection to the report for errors apparent on the face of it. See *Boggs* v. *Johnson*, 9 W. Va. 434; *Hyman* v. *Smith*, 10 W. Va. 298; *Kester* v. *Lyon*, 40 W. Va. 161, (20 S. E. 933). My conclusion is, that the court erred in fixing the amount to be paid by H.. C. King in redemption of said land which still remained. vested in the State; and erred also in allowing said King,, upon the payment of the amount of taxes fixed and ascertained by the commissioner as due upon the ten thousand acres, to redeem the entire three hundred and twenty-seven thousand acre tract. This error is at once apparent when we consider the fact that the decree allowing the redemption of the entire three hundred and twenty-seven thousand acres except as therein excepted would not only allow King to use this decree of redemption, and proceed against any of said junior claimants, who seemingly were protected under section 3 of Article XIII. of the Constitution, but for some reason were not, but would enable him to oust them from their possessions, and even to do so without ever having paid one cent in redemption thereof. This

at once shows the necessity of fixing the boundaries of the land redeemed, as well as the limits of the land protected under the constitution.

It is claimed that the State was estopped from appealing, because the school commissioner received the amount ascertained to be due by way of redemption; but this contention cannot be sustained when we consider that the State was proceeding to sell its own property for the purpose of collecting its taxes, and the statute provides that the former owner may redeem by paying the taxes. So, if he pays a less sum than the taxes to the commissioner of school lands, who has such powers only as are conferred on him by statute, the State is not estopped from showing that the amount paid was erroneous. Again, as is well suggested by counsel for appellant, the court should place the ten thousand acres claimed to be redeemed somewhere, in some locality, and the party redeeming should not be allowed to slide it around this three hundred and twenty-seven thousand acre tract to suit his convenience. For these reasons, the decree complained of is reversed, except so far as it recognizes the right of H. C. King to redeem said land by proper proceedings in accordance with the statute, and the cause is remanded.

ON REHEARING.

(February, 1900.)

After carefully considering the arguments of counsel, I see no cause to change the opinion already handed down, and have only thought proper to modify the fourth point of the syllabus, in order to make it more definite and explicit.

DENT, JUDGE: (*concurring*).

In the case of *Totten* v. *Nighbert*, 41 W. Va. 800, (24 S. E 627), this Court held that "the State is not bound by the unauthorized or illegal acts of its officers, nor can its title to a tract of land be transferred, devested, or affected in any manner or to any extent by such unauthorized or illegal acts, and all persons who deal with such officers do so at their peril in all matters wherein such officers exceed

their legitimate powers." This law rules and controls this case. If the officers who acted for the State in the court below confined themselves to their legitimate powers and strictly pursued the law in relation thereto, the State is thereby estopped, and this appeal is not maintainable. If, on the other hand, such officers disregarded the provisions of the law, and thereby exceeded their legitimate powers, this appeal is maintainable. The land in controversy is the property of the State by forfeiture. As a matter of grace, it extends to the former owner the right to redeem the same on payment of costs, taxes, and interest. If he desires to redeem the land as forfeited, he can do so by payment of costs, taxes, and interest ascertained as against the whole thereof; but, if he desires to redeem a less quantity than the whole, it is his duty to carefully describe and accurately locate the portion he seeks to redeem, so that the court may properly ascertain and fix in its decree the costs, State, county, and district taxes, and interest thereon, chargeable against the same, the prepayment of which is necessary to consummate such redemption. The State officers are not authorized to permit redemption in any other way, and their doing so is in excess and abuse of their powers, and the decree of the circuit court authorizing such redemption is not only erroneous, but is a nullity. For instance, in this case a tract of land containing three hundred and twenty-seven thousand acres, subject to certain unknown exceptions, is permitted to be redeemed on the mere theory or estimate that after such exceptions are deducted only ten thousand acres will remain scattered somewhere within the boundary of four separate counties, and on this basis a pretended estimate of the unpaid taxes is made. Such a redemption as this was not contemplated by the statute, nor would it ever have been authorized by the legislature. It is not as well defined as the long-time abandoned inclusive grant, which did, at least, set forth the number of acres of the prior and included grants reserved. This alleged redemption furnishes nothing on which to base anything like an accurate statement of the unpaid taxes, but the whole is guesswork, pure and simple. The lands are here. They belong to the State. The former owner may redeem them if he will com-

ply with his obligations to the State. But he must point them out, and show the district and county in which they are situated. Then the taxes can be fairly ascertained and the title, so far as it remains in the State, may be transferred to him. He is not bound to redeem any portion thereof unless he wants to, but he must make known the portion that he does want to redeem, so that the State may know and sell or properly assess that which is not redeemed. It is not sufficient to say he redeems the whole except such portions as are held by others by a better title; for the State knows nothing about the title of others. It is simply trying to collect its taxes off of the lands forfeited. If the former owner still wants to claim them under his forfeited title, he may do so by the payment of the taxes justly due thereon, subject to the rights that any person not a party to the redemption suit may have under the provisions of section 3, Article XIII., of the Constitution. Such persons are unknown, and, in so far as they are concerned, the State has the right to claim taxes for the whole boundary. If there are any of such holdings that the former owner does not want to include in and cover by his redemption he has the right to exclude them therefrom, and be relieved from payment of taxes thereon; but, if there are any of such holdings that are inchoate or doubtful, that the former owner wants to cover by his redemption, he has the right to do so by prepayment of the taxes thereon. None of these things can be accomplished otherwise than by the former owner locating the boundary he wishes to redeem, thus excluding therefrom such portion as he abandons. This knowledge is in the possession of the former owner. If he does not have it, no one does. If he wants to eject a subsequent claimant to any portion of this land, he should pay the taxes on such portion. It is certainly asking too much of the State to demand by the payment of the taxes on ten thousand acres an India-rubber title to stretch over three hundred and twenty-seven thousand acres at his pleasure. And, if such a decree were permitted to stand in a suit in ejectment thereunder, the trial court not only should require the former owner to show that the defendant's land was included in the three hundred and twenty-seven thousand acres, but that it was.

also included in the ten thousand on which the taxes were paid, and that he did not have such ten thousand acres exclusive of defendant's land. This would be the only just method of reducing such former owner to the true extent of his redemption. *Stockton* v. *Morris*, 39 W. Va. 432, (19 S. E. 531). For, if he already had the ten thousand acres on which he paid the redemption taxes, exclusive of the defendant's land, such land could not be regarded as redeemed, but the title, if not in the defendant, would still be in the State, unredeemed, and the ejectment suit would thereby be defeated. The decree, however, permits the redemption of the whole three hundred and twenty-seven thousand acres of land. It therefore does not follow, nor is it based on, the commissioner's report, except as to the amount of the taxes. The report ascertains "that about ten thousand acres of said land is unclaimed by junior claimants, and situated in West Virginia,—in McDowell County eight hundred acres, Mingo County one thousand seven hundred acres, in Logan County five thousand seven hundred, and in Wyoming County one thousand eight hundred acres; and the taxes and interest thereon will be found in a table hereinafter set forth." This is all the land on which the taxes and interest were ascertained, and this is all that, in any event, should have been adjudged redeemed, for it is all on which the taxes have been paid. This excludes all the land that is claimed by junior claimants, whether their claims are just or unjust; and the decree of redemption should have done the same thing, thus giving to the former owner ten thousand acres not claimed by junior claimants, and giving him no land but that on which he had paid the taxes as ascertained and fixed. While such a redemption would have been a departure from the accuracy required by law, it would not have been plainly unjust to the State. The decree, in disregard of the commissioner's report, is made not only to cover the ten thousand acres, but all the land claimed by junior claimants, except such as are protected by the Constitution. Thus, all the unprotected claimants are placed at the mercy of the former owner, although he paid no taxes in redemption of their lands from forfeiture. While it is law that he may redeem these lands, and eject the claim-

ants, yet the law does not permit him to do so; nor is it just to the State that he should until he satisfies the unpaid taxes due thereon. The inchoate title of these claimants until the payment of the arrearage taxes is superior to the forfeited title, and may become absolute. To permit such an illegal redemption to stand as valid would be to deprive these junior claimants of their possessory rights without due process of law. They have no right to object to the redemption of the land, but they have the right to object to its redemption in an illegal manner; and, the decree being in excess of the jurisdiction of the circuit court as limited by the statute, and void as to the State, would be likewise void as to the junior claimant, and invalid to sustain the forfeited title. If this Court should permit this decree to stand, and hold the State had not the right of appeal, this would not be binding on the junior claimants; and, when this decree was presented against them, they would have the right to show by the record, including the commissioner's report, that the lands claimed by them were excluded from the redemption, that the taxes had not been paid thereon, and that the decree, in so far as it affected them, was in excess of the jurisdiction of the court. Without prepayment of taxes thereon, the court is without authority to relieve the land from forfeiture. This is made a condition precedent to redemption. If the decree fails to require such prepayment directly or indirectly, it is void. The circuit court cannot give away the State lands nor the State's taxes. Such donations are void. The legislature only has limited power to do so. Freem. Judgm. § 120c; *Yates* v. *Taylor County Court*, (decided at this term) 35 S. E. 24. Such decree is, therefore, valueless, in any event, to the original owner, except as to that portion of the land on which he has prepaid the taxes, namely, land not in the possesssion of junior claimants excluded by the estimate of the commissioner's report in ascertaining the unpaid taxes, and, for the good of all parties in interest, should be reversed and annulled.

*Reversed.*