### HELLEMS v. ROSZEL.

(Circuit Court of Appeals, Fourth Circuit. February 17, 1919.)

No. 1628.

1. TAXATION ⟨⟩713—TAX SALES—REDEMPTION—RECORD OF RECEIPT—BONA FIDE PURCHASER.

Under Code W. Va. 1913, c. 31, § 16 (sec. 1074), providing that, if the receipts on redemption from tax sale are not filed with the clerk of the county court, the redemption is void as to assignees for valuable consideration without notice, the assignee of a tax purchase must show that he was a bona fide purchaser to entitle him to the land as against the former owner, who paid the amount required to redeem to the purchaser after the assignment, but did not file a receipt.

2. TAXATION ⟨⟩725—TAX SALES—REDEMPTION AFTER ASSIGNMENT OF CERTIFICATE—NOTICE TO OWNER.

The assignee of the purchaser of land at tax sale cannot defeat the owner's redemption by payment to the purchaser, unless the owner had notice of the assignment.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Taxation** ⚖️➡725—Tax Sale—Redemption—Assignment—Delivery of Receipt.

Since Code W. Va. 1913, c. 31 (secs. 1058-1112), gives a receipt for money paid at tax sale no greater significance than an ordinary receipt, and section 19 authorizes the execution of a tax deed without surrender of the receipt, redemption on payment to the original purchaser is not ineffective against an assignee, because the receipt had been surrendered to the assignee and was not demanded by the owner.

4. **Taxation** ⚖️➡696—Redemption from Tax Sale—Statutes—Construction.

Statute authorizing redemption by the owner of land sold for taxes must be liberally construed in the owner's favor.

Pritchard, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Suit by L. M. Hellems against S. Samuel Roszel. Decree dismissing the bill, and plaintiff appeals. Reversed.

Linn & Byrne, of Charleston, W. Va., for appellant.

Robert S. Spilman, of Charleston, W. Va., and Samuel Price, of Lewisburg, W. Va., for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. On September 10, 1913, S. Samuel Roszel commenced an action of unlawful detainer against L. M. Hellems in the District Court for the Southern District of West Virginia, to recover possession of 25 acres of land in Greenbrier county. On November 11, 1914, L. M. Hellems filed his bill in this court, seeking to enjoin the law action of detainer and to remove as a cloud upon his title the tax deed upon which Roszel relied in his law action. After the pleadings in the equity suit were made up, the defendant Roszel moved to dismiss the bill on the ground that the facts stated therein did not constitute a defense to his tax deed. On December 17, 1917, the District Court sustained the motion of dismissal, with leave to the plaintiff to tender an amended bill within 20 days. The plaintiff declined to amend, and a final decree of dismissal was entered on February 9, 1918.

The question, therefore, made by the appeal, is whether the following facts appearing from the bill constitute a cause of action: The tract of land was charged as the property of I. W. Hellems with the taxes for the years 1907, 1908, and 1909, and returned as delinquent as to the taxes of 1909. It was sold by the sheriff according to law, on December 11, 1911, and purchased by W. D. Slaven for $5.03. On that day, the sheriff, by his deputy, Watts, executed a receipt to W. D. Slaven for $5.03, purporting to be for the redemption of the land. On the same day the sheriff, by his deputy, James W. McClung, executed another receipt, purporting to be for the purchase money paid by Slaven. On May 17, 1912, I. W. Hellems made a conveyance of a tract of land, including the 25 acres, to L. M. Hellems. On October 1, 1912, Slaven indorsed an assignment of the tax purchase on the sheriff's receipt for the purchase money to E. C. Harrison. On October 10, 1912,

Harrison assigned the purchase to Roszel. Within 12 months from the date of the tax sale, L. M. Hellems, owner of the land, paid to L. E. McClung, to whom Slaven, the purchaser, referred him as his agent, the amount of the bid, which was the whole amount claimed by L. E. McClung as necessary for the redemption. But it does not appear whether this payment was made before or after Slaven's assignment to Harrison on October 1, 1912. On October 15, 1912, Slaven wrote to I. W. Hellems that he would have to pay other back taxes, referring him to L. E. McClung for the amount. On November 20, 1912, L. M. Hellems paid McClung $4, taking from him a receipt therefor for the taxes of 1908. On the same day there was indorsed on the original receipt for redemption issued to Slaven by the sheriff this receipt:

"Received of Lem Hellems amount in full redemption the tract of land named herewith. Nov. 20, 1912.         W. D. Slaven,
                                        "By L. E. McClung."

It does not appear whether or not Slaven had actually paid this delinquent tax for 1908. If he had, then under the statute the redemption could not be complete until November 20, 1912, when the owner paid the amount demanded. There is no allegation in the answer that Slaven or Harrison or Roszel had at any time given Hellems notice of the assignment of the purchase. After the expiration of 12 months from the tax sale, Roszel had the land surveyed as required by the statute, and received from the clerk, as assignee of Slaven, a deed for the land.

[1] Under the West Virginia statute, there is no doubt that Harrison's tax title is good, unless the steps taken by Hellems, the owner, operated to redeem the land from the sale. Section 15, chapter 31 (sec. 1073) Code of West Virginia, provides that the owner of the land—

"may redeem the same by paying to the purchaser, his heirs or assigns, within one year from the sale thereof, the amount specified in the receipt mentioned in the tenth section of this chapter, and such additional taxes thereon as may have been paid by the purchaser, his heirs, or assigns, with interest on such purchase money, and taxes at the rate of 12 per centum per annum from the time the same may have been so paid."

With respect to the method of redemption, section 16 (sec. 1074) provides:

"When the owner of real estate sold for the nonpayment of taxes thereon, or any other person having the right to redeem the same, shall pay the amount mentioned in section 15 of this chapter, the purchaser, his heirs or assigns to whom such payment is made, shall sign and give to the owner or other person redeeming, duplicate receipts showing when and by whom payment is made and the amount paid; or duplicate certificates or statements that the former owner or other person having such right, redeemed the real estate. * * * One of said duplicate receipts or writings shall be filed with the clerk of the county court of the county in which the real estate was sold, on or before the day on which the right to redeem the same will expire under the provisions of the said fifteenth section of this chapter, and the clerk shall indorse on both such duplicates the fact and time of such filing. If the same be not so filed, such redemption shall be void as to creditors and subsequent assignees of the benefit of the purchase of such real estate, from the purchaser thereof, his heirs or assigns, for valuable consideration without notice, at any time before the same is so filed. If such receipt or writing be filed after

the time herein required, it shall operate as a notice to all persons from and after the date of such filing."

[2] This last section was not complied with by the owner of the property by procuring of Slaven, the purchaser, the duplicate receipts provided for, and filing them with the clerk of the county court. Therefore, if Harrison and Roszel purchased after this payment of the redemption money to the original purchaser, the payment would be ineffectual against them. But the burden of alleging and proving that they were purchasers for value after the redemption was upon them. Without such allegation and proof, they could not avail themselves of the failure of the owner to comply with the statute for the protection of an assignee for value without notice. If the assignment was made to them before the attempted redemption, the payment to the purchaser of the redemption money was good, in the absence of notice to the owner of the assignment. As assignees, they were charged with notice of the right of the owner to redeem within 12 months, and the right of the owner to pay to the original purchaser could only be defeated by notice of the assignment. Clarke v. Hogeman, 13 W. Va. 718, 729; 2 Pomeroy's Equity Jurisprudence (4th Ed.) §§ 702–704; Withers v. Greene, 9 How. 213, 13 L. Ed. 109; 5 C. J. 978, and authorities cited; 2 R. C. L. 30; Dillingham v. Trader's Insurance Co., 120 Tenn. 302, 108 S. W. 1148, 16 L. R. A. (N. S.) 220.

[3] There is nothing whatever in the statute to indicate that the memorandum receipt issued by the sheriff has any greater significance than an ordinary receipt evidencing the payment of the obligation assumed by the purchaser. The statute does not provide that it is necessary to the validity of the assignment that it should be indorsed on this receipt, nor does it require that the owner should demand the delivery of this receipt when he pays the redemption money. It is significant too that section 19 (sec. 1077), authorizing the clerk to make a deed in pursuance of the purchase where the land has not been redeemed, does not require the production of the sheriff's receipt. On the contrary, that section provides that such deed—

"shall be made to the purchaser himself or to such person as he may direct, either in writing acknowledged as a deed is required to be acknowledged, or by his joining therein."

[4] An assignment made by the purchaser is not an assignment of the receipt, but an assignment of the purchase of which the receipt is nothing more than evidence. The receipt imports no obligation assumed by the owner of the land or any one else, and is therefore not like a bond or mortgage, a chose in action, of which it has been held in some cases the obligor should demand possession on making payment. It is nothing more than an acknowledgment of the payment of the purchase money. Its delivery or possession imported no right in an assignee and demand of its surrender by the owner was not required as a condition of redemption. The court cannot as against an owner seeking to redeem give an effect to the receipt not expressed in the statute; for the statute must be liberally construed in his favor. Dubois v. Hep-

.burn, 10 Pet. 1, 9 L. Ed. 325; Poling v. Parsons, 38 W. Va. 80, 18 S. E. 379. The principle is applied in Hess v. Potts, 32 Pa. 407, in which the facts were very similar to those here involved.

As it appears by the pleadings that the owner of the land paid the redemption money to the original purchaser within 12 months from the date of the sale and it does not appear that he had notice of the assignment of the purchase, or that the defendant was a subsequent assignee of the bid for value without notice, the payment by the owner to the original purchaser was effectual as a redemption of the land under section 15, and Roszel as assignee of the purchase took nothing under the deed executed by the clerk.

Reversed.

PRITCHARD, Circuit Judge (dissenting). It is with reluctance that I dissent from the opinion of the majority of the court in this instance, but a careful consideration of the statutes of West Virginia relating to land sales for taxes impels me to do so.

Section 15, chapter 31, of the Code of West Virginia provides that—

"The owner of any real estate so sold, his heirs or assigns, or any person having a right to charge such real estate for a debt, may redeem the same by paying to the purchaser, his heirs or assigns, within one year from the sale thereof, the amount specified in the receipt mentioned in the tenth section of this chapter and such additional taxes thereon as may have been paid by the purchaser, his heirs, or assigns, with interest on said purchase money, and taxes at the rate of 12 per centum per annum from the time the same may have been so paid, and such additional expenses as may have been incurred by such purchaser before the expiration of said one year in procuring survey and giving notice as provided in section 19 of this chapter."

This is a year's grace granted to the owner, provided he exercises the right thus granted within a year by complying with the provisions of the statute.

The Supreme Court of West Virginia, in the case of State v. King, 47 W. Va. 437, 35 S. E. 30, in discussing the right conferred upon the owner, said:

"While it is law that he may redeem these lands, and eject the claimants, yet the law does not permit him to do so; nor is it just to the state that he should until he satisfies the unpaid taxes due thereon. The inchoate title of these claimants until the payment of the arrearage taxes is superior to the forfeited title, and may become absolute."

It does not appear that the owner has complied with any of the provisions of the statute. I am not unmindful of the rule that in a case like the one at bar the statute should be construed most favorably to the owner, but the rule is subject to this qualification, viz.: Where the owner is granted a fixed time within which he may redeem his property by the payment of all taxes and costs he must comply with the plain provisions of the statute, of which he is presumed to have knowledge.

In addition to the section above quoted, section 16, chapter 31, of the Code of West Virginia, in contemplation of the fact "that the purchaser, his heirs or assigns may refuse to receive the same, or may not reside or cannot be found in the county," provides that it shall be the duty of the owner to pay the amount of taxes due to the clerk of

the county court, and in the absence of objection it becomes the duty of the clerk to give the purchaser a receipt for the same. However:

"If the purchaser, his heirs, or assigns, disputes the right of any one so paying money to the clerk to redeem the real estate for the redemption of which such money is paid, he or they may within one year after such payment give to such person or his heirs, executors or administrators a notice in writing of such dispute, requiring him or them to appear before the circuit court of the county on a day to be named in such notice and prove his or their right to redeem the said real estate."

Such notice might be served at least 10 days before the day on which it is returnable, and the Court shall make an order according to the facts and direct the clerk of the county court to execute to the purchaser, his heirs or assigns, a deed to the real estate, as required by the statute.

When we come to consider the facts of this case, we find that the owner has not complied with any one of these provisions. Instead of doing so, he went to the original purchaser who had already assigned and transferred his receipt for the purchase money to E. C. Harrison, and Harrison in turn had transferred the interest he thus acquired to the appellee—thus giving the appellee an inchoate right under the statute to have his deed made at the end of the year, as provided by law, upon having the premises surveyed so as to determine the quantity of land to be conveyed, which he did, thus perfecting a complete chain of title to the premises in question by strict compliance with the law. At the time the owner paid the money to the original purchaser, he knew, or ought to have known, and as a matter of precaution, that it was his duty to take from such purchaser the receipt for the purchase money the sheriff had given him at the time he purchased the land in question. It does not appear that he even demanded a receipt for the same, and if he had done so his demand would have been unavailing, inasmuch as the purchaser by operation of law had parted with the inchoate right he originally had under the statute, and he therefore was no longer the purchaser in the sense contemplated by the statute, and the payment to him was not a compliance with the statute in any sense of the word. In other words, the original purchaser had ceased to sustain any relation whatever by operation of law to the purchase of the land. From the moment he parted with his inchoate right he was an absolute stranger to the transaction, and therefore not entitled to receive the purchase money and interests as provided by the statute.

Under these circumstances, I think that the assignee of the purchaser having had a survey made at the end of the year, it became the duty of the clerk to execute and deliver to him a deed, and the clerk having executed and delivered him a deed to the premises he thereby acquired a perfect title to the land.