## WEBB vs HUNT.

### Opinion Delivered October 26, 1899.

*1. Marshaling assets—When right becomes fixed.*

The right to have a marshaling of assets is a mere equity, and not a lien. The equity can only become a fixed right by taking proper steps to have it enforced. Until this is done, it is subject to displacement by a subsequently acquired lien.

*2. Marshaling assets—Doctrine of.*

The doctrine of marshaling of assets obtains where the debtor is the same to all creditors, and the creditors have liens, some on all, and the others on part of the mortgaged property, but the right should not be enforced to the prejudice of third parties.

*3. Sale of Mortgaged Property—Appraisement.*

The sale of mortgaged property under the mortgage, without appraisemdnt, is void.

*4. Void Sale under Mortgage—Right of Mortgagee who purchases property.*

Where a mortgagee sells property without appraisement bids it in himself, his rights are those of a mortgagee in possession, and the mortgage must be foreclosed again, and upon such sale whatever money the mortgagee receives from the use and from the sale of the property, after satisfying the mortgage, should be paid to the mortgagee.

Appeal from the United States Court from the Northern District.

W. M. SPRINGER, Judge.

Suit by Joseph Hunt against John B. Webb. Decree for plaintiff. Defendant appeals. Modified.

The report of the master in this case sufficiently presents the facts of the case, and the defendant's exceptions to the findings of the master present the questions of law upon those findings, submitted to the court. The report and exceptions are as follows, to-wit:

"(1) That the plaintiff is a citizen of the Cherokee Nation, and the defendant a citizen of the United States, and that both parties reside and may be found within this district. That on July 1, 1892, one William C. Meyers executed a mortgage to the Whitman Agricultural Company to secure an indebtedness of $450. The said mortgage was given upon one steam hay press and two mules. That on July 18, 1892, the said Meyers made a mortgage to the plaintiff, under the firm name of Joseph Hunt & Co., to secure an indebtedness of $350, and that said mortgage was given upon one 10 horse power engine and the steam hay press which had been before that time mortgaged to the Whitman Agricultural Company. That all of said property was at that time located within this district. That the first mortgage was duly filed on September 24, 1892, in the office of the clerk of the United States court at Muskogee, and that the second mortgage was recorded in said office on October 22, 1892. That in December, 1892, the defendant herein bought the two mules included in the Whitman mortgage from the said Meyers, paying him $170 for them. That both of said mortgages above described were on record at the time of the purchase of the mules, and the defendant was charged with constructive notice of the existence of the mortgage upon the mules, though he testified at that time he did not have actual notice thereof. That a short time thereafter, the defendant learning of the existence of the mortgage upon the two mules he had bought (the said Meyers having left the country), he bought the said mortgage and the note given with the same by the said Meyers from

the Whitman Agricultural Company; paying therefor $176.15, the amount then due upon the same. That the said defendant afterwards sold the two mules at private sale; selling one for $90, and the other for something near the same amount. That on November 8, 1893, the defendant foreclosed the Whitman mortgage upon the hay press, and sold the same at public sale, and bought it himself for $50, with which amount he credited the Whitman note, though the credit does not appear to be entered upon the note. That the hay press was not appraised as required by law prior to the said mortgage sale. That, . after the defendant bought in the said hay press, he kept it until June or July; 1894, when it was sold at private sale for $300; but the parties who bought it paid to defendant $80, and then turned back the press to the defendant in default of payment for the same; and that afterwards defendant baled 300 tons of hay with said press, and that baling hay was reasonably worth the sum of 20 cents per ton for the use of the press. That the said press is still in possession of the defendant, and has not been damaged more than $50 worth by use and natural depreciation. That the plaintiff herein, who has been acting as sales agent for the Whitman Agricultural Company, was an indorser upon the note of Meyers which was purchased by the defendant herein; the same representing the balance due the Whitman Company from Meyers. That the plaintiff instituted a suit against the defendant herein at Muskogee, seeking to replevy the hay press, and subject it to sale for the satisfaction of the said second mortgage in his favor, as above set out, but said suit was decided in favor of this defendant. That on July 20, 1894, three appraisers were appointed by T. J. Crooks, U. S. commissioner at Vinita, at the instance of Joseph Hunt, the plaintiff herein, to appraise the said traction engine included in the mortgage given by Meyers to Hunt, and on that day appraised the said engine at $150: and that on July 21, 1894, the said

engine was sold at public sale at Vinita, in pursuance of the conditions of the said mortgage, and the same was sold for the sum of $101, from which, after deducting $6.25, the expense of foreclosing the mortgage, the plaintiff credited the balance, $94.75, upon the $350 debt due him from said William C. Meyers. That there is a balance due plaintiff of $325.55, with interest at 10 per cent. from July 21, 1894, and that the said Meyers being absent from the territory, and having left no property here, there is no means by which the plaintiff can obtain satisfaction for this debt, unless the property herein be subjected to the payment of the same. That the plaintiff, prior to the sale of the said hay press under the mortgage of the Whitman Agricultural Company, notified the defendant to look to the two mules included in that mortgage for the satisfaction of that debt which had been transferred to him, leaving the hay press free from the lien of that mortgage, and liable to the satisfaction of plaintiff's second mortgage thereon; but defendant refused to do so, claiming that as he had bought the mules at private sale from Meyers, and had afterwards bought the Whitman debt, the title to the mules had vested absolutely in himself, and that he could not be forced to subject them to the payment of the Whitman debt, in order to favor the plaintiff. (2) If the mules had not been sold to the defendant, and the Whitman debt had been about to be foreclosed, I am of the opinion that the plaintiff herein could have compelled the Whitman Agricultural Company to resort to the mules first to satisfy the debt, leaving the hay press as nearly free as possible to the satisfaction of plaintiff's debt. Now, then, when the defendant bought the mules, the recording of the mortgage upon them is sufficient to charge him with constructive notice of the mortgage, and the fact that the defendant subsequently acquired the Whitman note and mortgage does not better his condition as purchaser of the mules with notice of the lien upon them; and therefore I am

of the opinion that the defendant should be required to apply the value of the mules, which is shown by his testimony to be at least $170, to the satisfaction of this Whitman debt. Then, too, his own testimony shows that he has received from this hay press $860 in cash, and has baled 300 tons of hay, worth 20 cents a ton for baling, making a total of $140 realized by the defendant from the hay press, and being largely in excess of the amount due upon the Whitman note, after crediting same with $170, the value of the mules. The defendant's contention that the fact that the plaintiff was an indorser upon the Whitman note would operate against him in his attempt to marshal the assets involved herein, it seems to me, is not well taken, for the reason that the plaintiff, as surety upon that note, would be entitled to have all of the property mortgaged subjected to the payment of the Whitman debt before any action could be taken toward forcing him, as surety, to pay the same. So, therefore, I leave this view of the case out of consideration. I am of the opinion that the defendant is in no better position in this matter from having received an assignment of the Whitman debt after his purchase of the two mules than if he, an entire stranger to the whole transaction, had bought these mules. He is interested in this matter in two capacities,—one as a purchaser of property upon which there was a valid recorded mortgage, and the other as the assignee of a mortgage and note secured in part by the same property. Under the well-known doctrine of equity which regards that which should be done as already done, I am of the opinion that the court must treat this matter as if the mules had been subjected by Webb to the payment or part payment of the Whitman debt, just as if no other right of his as purchaser hereof had intervened. (3) There is an additional question which arises in regard to the mortgage sale of the hay press by Webb, in this: Under section 4763, Mansf. Dig. (section 3074, Ind. T. Ann. St. 1899), it is provided that

appraisement of property may be waived only in mortgages to secure money loaned; and in the four sections preceding that one it is provided that property shall be appraised prior to a sale under a mortgage and shall not sell for less than two-thirds of its appraised value, and that, in case it shall not sell for two-thirds of its appraised value, another offering may be made in sixty days thereafter, at which offering sale shall be to the highest bidder, without reference to the appraisement. The testimony shows that the defendant did not have the hay press appraised prior to offering it for sale under the mortgage, and consequently I am of the opinion that the sale which was made was voidable as against parties interested. (4) That there was due upon the Whitman mortgage at the time it was assigned to this defendant, $176.15, and that after applying $170, the value of the said mules, thereto, there was a balance of only $6.15 due to this defendant, to cover which, his testimony shows, he has received, in money and use, $140 from said hay press. Wherefore, the premises considered, I am of the opinion that the prayer of plaintiff should be granted, that the hay press should be ordered to be sold under the mortgage of Meyers in favor of the plaintiff, and that plaintiff should have judgment against the defendant for so much of said $140 derived by defendant from this hay press as would remain after deducting the $6.15, the balance due upon the Whitman debt, with interest thereon from the date when this debt was assigned to the defendant; and I therefore recommend that the court will so order. I also ask that I be allowed a reasonable fee for my services as master herein. "

The defendant below (appellant here) filed 11 exceptions to the master's findings, as follows: "(1) That he does not find that the plaintiff, Hunt, was present at the sale of the hay press made by Webb, and at such sale gave notice to all parties that he owned the press, and that, if

any one bought it, they would have a lawsuit. The defendant excepts to the conclusions of law as made by the master in chancery in this case, and avers that said conclusions are not supported by the facts in this case. (2) We deny the master's conclusion of law that the defendant, Webb, occupies the same position as to the plaintiff in this case as did the Whitman Agricultural Company; that Webb had no more or superior rights than did the Whitman Agricultural Company, though he bought the mules from William Meyers, and paid value for them. (3) That we except to that part of the master's report that charges the defendant with constructive notice of the Hunt mortgage, or notice that Hunt was in a condition that he might marshal assets in the hands of the Whitman Agricultural Company. (4) The defendant excepts to the conclusions of the master, in that he holds that the defendant was subject to the Whitman Agricultural Company's mortgage in the same respect after he bought and had it assigned as before he purchased it, in reference to his rights respecting the mules purchased of Meyers. (5) The defendant excepts to the finding of the master that he should apply the proceeds of the mules upon the note bought from the Whitman Agricultural Company. (6) The defendant excepts to the finding of the master in this: that the defendant shall pay the plaintiff the amount realized on sale of hay press, when the same was returned back as good as when sold. (7) The defendant excepts to the finding of the master, in that the fact of plaintiff being an indorser of the note does not prevent him from having the mules marshaled in this case. (8) The defendant excepts to the finding of the master in this: that he holds that the defendant is in no better condition after buying the Whitman Agricultural Company's note than if he had been a stranger to the purchase of the mules. (9) The defendant excepts to the finding of the master in this case, in that he seeks to apply the rule of equity, 'that equity considers that

as done which should be done,' to the facts in this case, in so much that the defendant would be considered as having applied the proceeds of the mules to the payment of the Whitman Agricultural Company's note. (10) The defendant excepts to the finding of the master in this: that the sale was not made according to the provisions of the statute of Arkansas. (11) The defendant excepts to the conclusion of the master, and to his recommendation as to what the court should order in the case; that said conclusions are not warranted by the facts in the case; and asks the court to find that this is not a case for marshaling of assets, and that this case be dismissed at plaintiff's costs." The court overruled the defendant's exceptions to the findings and report of the master, and confirmed the same, and rendered a decree for plaintiff; and defendant appealed to this court.

*F. M. Smith* and *Hutchings & West*, for appellant.

*W. H. Kornegay*, for appellee.

TOWNSEND, J. The appellant here (defendant below) has filed 14 specifications of error. The first eleven are to the overruling of the 11 exceptions of the appellant to the master's report, and the other three are as follows: "(12) In ordering a sale of the hay press, and that the proceeds of said sale be paid to the plaintiff on his claim of $325. (13) In taxing the master's fee and the fees of officers and witnesses against appellant. (14) In rendering judgment against the defendant for any balance that might be unsatisfied on his claim, in no case to exceed $133.85." These specifications of error will more readily be considered by discussion of the facts and the law applicable thereto than to consider them seriatim. The situation of the parties prior to appellant's purchase of the mules from Meyers was as follows: The Whitman Company held a first mortgage on the press and mules. Appellee held a first mortgage on an

engine, a second mortgage on the press, and nothing what-
ever on the mules. This being a bill filed for the marshaling
of assets, it becomes necessary to inquire in this case at what
time the equity attaches, and against whom it can be en-
forced. It is unnecessary to cite authorities to establish the
doctrine that the inchoate right to have a marshaling of se-
curities is a mere equity, and not a lien. This is settled in
Gilliam vs McCormack (Tenn. Sup.) 4 S. W. 521. In the
notes, which discuss the cases very fully, it is said "that the
equity to marshal assets is not one which fastens itself upon
the situation at the time the successive securities are taken,
but, on the contrary, is one to be determined at the time the
marshaling is invoked. The equity can only become a fixed
right by taking proper steps to have it enforced, and until
this is done it is subject to displacement and defeat by sub-
sequently acquired liens upon the funds. The qualification
upon the doctrine of marshaling, that marshaling will not
be permitted to the prejudice of third persons, whether
wholly or partially dependent upon this principle, is one
well settled." The court say further: "The case of Conrad
vs Harrison, 3 Leigh, 546, seems to be an authority in con-
flict. Nevertheless we have not a doubt as to the correct-
ness of our conclusions." And in the notes, after referring
to the following English authorities: "The English editors
of White & Tudor's Leading Cases in Equity (4th Am. Ed.,
vol. 2, pt. 1, p. 252) say: 'Marshaling is not enforced to
the prejudice of third persons. Thus, in Averall vs Wade,
Loyd & G. t. Sugd. 252, where a person, being seised of
several estates, and indebted by judgments, settled one of
the estates for a valuable consideration, with covenant
against encumbrances, and subsequently acknowledged oth-
er judgments, it was contended by the subsequent judgment
creditors that, as they only affected the unsettled estates, on
the principle in Aldrich vs Cooper, 8 Ves. 382, as they had
only one fund, they had a right to compel the prior judg-

*Marshaling assets. When right fixed.*

ment creditors, who had two funds,—the settled and unsettled estates,— to resort to the settled estates, or, at any rate, that the settled estates ought to contribute to the payment of the prior judgments. Lord Chancellor Sugden, however, held that the subsequent judgment creditors had no equity to compel the prior judgment creditors to resort to the settled estates,—on the contrary, that the prior judgment should be thrown altogether on the unsettled estates, and that the subsequent judgment creditors had no right to make the settled estate contribute; observing, after a close examination of Aldrich vs Cooper, that, upon the whole of the case, you will find Lord Eldon, in the application of the principle, 'carefully avoids dealing with the rights of third persons.' So, in Barnes vs Racster, 1 Younge & C. Ch. 401 (a case almost identical with the one under consideration), Racster being seised of Foxhall coppice, and a piece of land marked in a plan of the estate as No. 32, mortgaged, in 1792, Foxhall to Barnes; in 1795, Foxhall to Hartwright; in 1800, Foxhall and No. 32 to Barnes; and in 1804, Foxhall and No. 32 to Williams. The subsequent incumbrancers took with notice. It was held by Sir Knight Bruce, V. C., that the court ought not, as against Williams, to marshal the securities. His honor said that, circumstanced as the case was, Hartright and Williams stood, with regard to the matter in dispute, on an equal footing; that Barnes ought to be paid out of the respective proceeds of No. 32 and Foxhall, pari passu and ratably, according to their amounts; that the residue of the proceeds of Foxhall ought to be applied towards paying Hartwright; and that the residue of the proceeds of No. 32 ought to be applied towards paying Williams,—a conclusion. as he considered, entirely in accordance with the principles on which Lanoy vs Duchess of Athol, 2 Atk. 446, Aldrich vs Cooper, and Averill vs Wade were decided,"— further state: ''These cases, and the sound equity upon which they were manifestly founded, sustain the proposition

that marshaling is a pure equity, and does not at all rest upon contract, and will not be enforced to the prejudice of either the dominant creditor or third persons, or even so as to do an injustice to the debtor. We are not disposed to extend the doctrine so as to affect the equities or legal rights of third persons.'' The same rule obtains in Arkansas. In Marr vs Lewis, 31 Ark. 203, the court say: ''When one creditor has a security upon two funds, another having security on one of them may, if necessary to the protection of his security, compel the other to resort to the fund not embraced in it, if it can be done without prejudice to the common debtor, or third persons having an interest in the fund.'' So, when a wife mortgages her land for her husband's debts, another creditor of the husband cannot compel the mortgagee to proceed against the wife's lands, and leave the husband's assets free for him. Bisp. Eq. § 342. In Adams, Eq. p. 273. it is said: ''The equity is apparently not binding on the debtor's alienee for value, notwithstanding that he may have taken with notice of the facts, unless his interest was acquired after the institution of a suit; for, although the ordinary rule is that an alienee with notice is bound by all the equities which bound his alienor, yet there is a distinction in regard to this particular equity, because the omission of the creditor to take an express collateral charge raises a presumption that he meant to leave the equity defeasible, and to continue the owner's power of dealing with the second estate for value unfettered by his claim.'' In 2 Beach, Mod. Eq. Jur. § 782, it is said: ''Marshaling is a pure equity, and will not be enforced to the prejudice of another man's rights. * * * Nor can the rights of third parties be interfered with in order to give a junior creditor the benefit of this doctrine.''—citing the Tennessee case, supra, and New Jersey, Pennsylvania, and Maryland cases, in support of the proposition. See, also, McArthur vs Martin, 23 Minn. 75; Green vs Ramage, 18 Ohio, 428; in re Hob-

son (Iowa) 46 N. W. 1095. "The mortgagor is the owner of the property, as against all the world, until a foreclosure of the mortgage. * * * The title of chattels does not pass from a mortgagor upon the execution and delivery of the mortgage, or upon a breach of its conditions; nor does the title pass until the foreclosure has been completed. After default, as well as before, the mortgagor of chattels is the legal and equitable owner thereof, and as such has a vendible interest in the chattel." Cobbey, Chat. Mortg. § 451.

In the case at bar, Meyers, the mortgagor, had a vendible interest in the mules, and, except as against the Whitman Company, could mortgage or sell them. He sold all his interest to the appellant. · The appellant then purchased the interest of the Whitman Company, the mortgagee. He thus became the owner of the interests of both mortgagor and mortgagee, and this all before appellee had taken any steps to marshal assets. It is clear from the circumstances that appellant did · not purchase the interest in the mortgage of the Whitman Company for the purpose of applying the value of the mules to the payment of the balance due on the Whitman mortgage, but to become owner of both the legal and equitable interest in the mules; and, when he became such, the legal and equitable title to the mules merged in him, and as owner he had a right superior to the inchoate equity of appellee to marshal assests. Wilhelmi vs Leonard, 13 Iowa, 339. Where the equities are equal, the law must prevail. Ritter vs Cost, 99 Ind. 80. In the notes to Aldrich vs Cooper, among the first limitations stated, within which the doctrine of marshaling is confined, are the following: ·"There must be, morever, two funds to which the person against whom the doctrine of marshaling is sought to be established can resort upon an equal footing, but it does not apply in cases to which such person has a superior right of lien upon one fund,'—citing Webb vs Smith, 30 Ch. Div. 192; and further: "But it would be utterly impossible to apply that doctrine to cases where the

single creditor is in truth himself bound to the party entitled to the other security,"—citing Dolphin vs Aylward, L. R. 4 H. L. 486. The doctrine of marshaling assets obtains where the debtor is the same to all the creditors, and the creditors have liens, some on all, and the others on part, of mortgaged property. But the limitation which we believe reasonable, conscientious, and just is that the same shall not be enforced to the prejudice of third persons. The appellee insists such is not the rule, but that the inchoate equity to marshal, if prior in time, is prior in right; and some authorities seem to go to that extent, and appellee insists that the decided weight of authority is that way. But the rule in the Tennessee case, followed, as we think, in the Arkansas case, and fully and expressly stated in the quotation supra from Adams on Equity, is the sounder and better and most conscientious rule to follow. We do not think this proceeding to marshal assets is barred by the former action of replevin between these parties. The issues are entirely different.

*Marshaling assets. Doctrine of.*

As to the hay press, there can be no question but that appellee is entitled to the proceeds of the same after appellant has received the balance due on the Whitman mortgage. The sale of the hay press without appraisement was void. Ellenbogen vs Griffey (Ark.) 18 S. W. 126. "Where the beneficiary in a trust deed buys the property at an invalid trustee's sale, and goes into possession, his rights are merely those of a mortgagee in possession after condition broken." Stallings vs Thomas, Id. 184. Whatever money appellant received for the use or on the sale of said press, or otherwise from said press, should be applied on the balance due on the Whitman mortgage, and the press should be appraised and sold according to law; and after paying the balance due on Whitman mortgage, and the costs of this proceeding, the balance should be paid to appellee, Let the judgment be modified as herein stated.

CLAYTON and THOMAS, JJ,, concur.