# CHARLESTON.

HAYMOND *et al. v.* MURPHY *et al.*

Submitted March 24, 1909.　　Decided May 4, 1909.

1. VENDOR AND PURCHASER—*Bona Fide Purchaser—Failure to Record Instrument.*

   Neither by subrogation, marshaling of assets nor otherwise, can land, purchased for a valuable consideration and without notice, be subjected to the satisfaction of judgments, rendered by justices of the peace against the vendor, not docketed at the time of the recordation of the deed or contract of purchase. (p. 619.)

2. MARSHALING ASSETS AND SECURITIES—*Nature. of Liens—Vendor's Lien.*

   If the land so purchased be bound, along with other unsold land of the vendor, by a vendor's lien, constituting the first lien on both tracts, it should be relieved from the burden thereof, in whole or in part, according to the circumstances of the case, by application of the proceeds of the sale of such other land to the satisfaction of the lien. (p. 620.)

3. APPEAL AND ERROR—*Objections to Commissioner's Report—Report.*

   Advantage of an error in a commissioner's report, apparent upon the face thereof, or upon the record of the cause, may be taken in the appellate court, though not noted in any exception to the report nor insisted upon in the court below. (p. 620.)

Appeal from Circuit Court, Braxton County.

Bill by W. E. Haymond and others against McComas Murphy and others. Decree for plaintiffs, and Tetrick Bros. & Stewart appeal.

*Reversed and Remanded.*

HALL BROS., for appellants.

HAYMOND & FOX, for appellees.

POFFENBARGER, JUDGE:

J. W. Tetrick, C. M. Tetrick and C. E. Stewart, partners doing business as Tetrick Bros. and Stewart, claim to have been prejudiced by a decree, pronounced in three consolidated creditor's suits against McComas Murphy and others in the circuit

court of Braxton county.  Murphy and his wife seem to have been trading extensively in real estate, town lots, and incurring heavy indebtedness, some of which was secured by vendor's liens and otherwise, and much of it unsecured.  The appellants bought from them two town lots, covered, along with other property, by a vendor's lien and a docketed justice's judgment.  At the time of their purchase, there were a good many other undocketed judgments of that kind and a number of others were subsequently obtained.  In the separate suits, brought to enforce the liens, some of the lots were sold, and while others remained unsold, the suits were consolidated, for convenience and the better protection of the interests of all parties.

The appellants were not interested otherwise than as purchasers of two lots as aforesaid.  These were lots Nos. 1 and 2 in Hyer and Stalnaker's Addition to the town of Burnsville.  At the time of the purchase, said lot No. 1, together with lots Nos. 5 and 6, were subject to a vendor's lien in favor of Hyer and Stalnaker for over $400.00.  On lots Nos. 5 and 6, so linked with No. 1, there was a deed of trust in favor of the Burnsville Exchange Bank and certain sureties for the sum of $300.00.  Hyer and Stalnaker held a vendor's lien on lots Nos. 69 and 70 and other land which Murphy, after his purchase thereof, had divided in lots, which he numbered 17 to 28, inclusive.  Murphy was also indebted to W. T. Brosius, trustee, for purchase money of Lot No. 3 in Section A and Lot No. 7 in Section 3 of Offutt's Addition, more than $700.00, which debt was a lien on said lots.  The vendor's lien on lots Nos. 1, 5 and 6 was ascertained to be $410.06, the trust lien on Nos. 5 and 6, $312.26, the contract lien on Nos. 69 and 70 and 17 to 28, $212.82, and the contract lien on Nos. 3 in Section A and 7 in Section 3, with the costs, $897.97.  On these two, there was another trust deed lien for $600.00.  Lots Nos. 5 and 6 were sold separately for $1,450.00, considerably more than enough to pay the vendor's and trust deed liens on them and No. 1; Nos. 69 and 70 and 18 to 28, for $888.00; and Nos. 3 and 7, for $1,330.00.  At the time of the purchase of lots Nos. 1 and 2 by the appellants, and the recordation of their contract of purchase, only one judgment had been docketed, that of Dowell, Helm & Co., for the sum of $278.-44.  At that time, the judgments recovered, amounted, in the aggregate, to $1,188.60 and after that date others, amounting to

$1,025.51, were recovered.    All of them but one were rendered by justices of the peace, and the one rendered by the circuit court was subsequent to the recordation of the contract of purchase.    Lot No. 1 had been conveyed to.McComas Murphy and Annie L. Murphy, his wife.    Lot. No. 2 had been bought of Hyer and Stalnaker by McComas Murphy and H. H. Coberly. How Coberly's interest was acquired by Murphy does not appear, but the lot was conveyed by Murphy and his wife to the appellants.    Only one of all the judgments was against Murphy and his wife, that of Burk and Garrett for $86.44.    The others were against Murphy alone.

All the lots, except Nos. 1 and 2, seem to have been sold.    One group, 5 and 6, bringing $1,450.00 another, 69, 70 and 17 to 28, $888.00 and another, 3 and 7, $1,330.00.    The proceeds of the sale of the' first group will almost pay all the liens on Nos. 1, 5 and 6 to and including the Dowell, Helm & Co. judgment; those of the second group will apparently pay something on this judgment, even if none of those, constituting liens on 5 and 6 prior to that of Dowell, Helm & Co., should be paid out of the proceeds of 5 and 6, and, if they should be largely satisfied out of the proceeds of 5 and 6, the proceeds of 69, 70 and 17 to 28 will apparently pay the Dowell, Helm & Co. judgment; or, if the judgments, having precedence over that of Dowell, Helm & Co., should be satisfied out of the proceeds of 69, 70 and 17 to 28, the surplus of proceeds of 5 and 6 seems to be amply sufficient to satisfy the Dowell, Helm & Co. judgment to the complete relief of both lot No. 1 and lot No. 2.

Finding this state of things in the consolidated suits, the court entered a decree, confirming the commissioner's report, adjusting the liens, and ordering a sale of the unsold lots.    By this decree, the surplus, arising from the sale of lots Nos. 5 and 6, was held liable for the debts, therein provided for.    It was further adjudged, ordered and decreed that lots 1 and 2 should not be sold, if the entire proceeds of lots 5, 6, 69, 70 and 17 to 28. should be sufficient to discharge the liens thereon; but that, if a balance of such liens should remain unsatisfied out of such proceeds, the sale of said two lots, or such parts thereof as may be necessary, shall be restricted to such balance, or prevented by payment thereof, but in no event shall they be liable for an amount in excess of the judgment in favor of Dowell, Helm &

Co. and lot No. 1 for the vendor's lien in favor of Haymond, administrator of Hyer, and S. Wise Stalnaker. The liens binding lots 5, 6, 69, 70 and 17 to 28, by virtue of the decree, are, first, the vendor's and trust deed liens, above mentioned, and then all the judgments in the order of their precedence over one another. The effect of this decree is to make lot No. 1 wholly satisfy the vendor's lien for $410.06, though it constituted the first lien on it and two others and the proceeds of sale of the other two were more than sufficient to satisfy it; and to make Nos. 1 and 2 pay the whole of the Dowell, Helm & Co. judgment, though it constitutes a lien on all of Murphy's real estate, and apparently could be satisfied out of the proceeds of lots 5, 6, 69, 70 and 17 to 28 without displacing any prior liens thereon. It also subjects Mrs. Murphy's one-half of lot No. 1 to this judgment against her husband alone. These are grounds of complaint against it.

The decree is, in our opinion, plainly violative of statutory provisions and also of well settled principles of equity. The appellants are protected in their purchase from undocketed judgments, rendered by justices of the peace, prior to the date of the purchase. Their contract was recorded before any of the judgments, other than that of Dowell, Helm & Co., were docketed, and there is no proof that the purchasers had any notice of them. Code. ch. 139, sec. 6. As purchasers of lots Nos. 1 and 2, they are entitled to protection from the sale of those lots, if the liens thereon, acquired before they purchased and recorded their contract, can be satisfied out of the proceeds of the other real estate of the vendor, without defeating liens thereon, prior to those constituting burdens on the land purchased. Code, ch. 139, sec. 8. In no event could the lots purchased by them be made liable, directly or indirectly, by marshaling of assets or otherwise, for judgments, not constituting a lien on the lots purchased, as against the purchasers thereof. The principle of marshaling assets cannot be invoked or applied so as to defeat statutory rights. Section 6 says: "The judgment of a justice of the peace shall not be a lien on real estate" as against a purchaser thereof for valuable consideration without notice, "until the same is docketed as aforesaid." Section 8 of said chapter provides as follows: "Where the real estate liable to the lien of a judgment is more than sufficient to satisfy the same, and

it, or any part of it, has been aliened, as between alienees for value, that which was aliened last shall, in equity, be first liable, and so on with other successive alienations until the whole judgment is satisfied.  * * *  But any part of such real estate retained by the debtor himself shall be first liable to the satisfaction of the judgment." These provisions make it the duty of the court to exonerate lots, Nos. 1 and 2 by satisfaction of the judgment liens thereon out of other property, still owned by the grantor, the judgment debtor, if that can be done without defeating liens on such other property, having preference over the liens covering such other property and the lots sold. Independently of these statutory provisions, the same result would be accomplished by the application of equity principles. The equity of the purchaser is equal to that of the judgment lienors. The statute just quoted applies to judgments only, but general equity principles apply the same rule to the vendor's lien. Besides, there is no ground upon which judgments acquired subsequent to the purchase can be fastened upon these lots to the prejudice of the purchaser. The decree complained of is broad enough to do that to the extent of the amount of the vendor's lien and the judgment in favor of Dowell, Helm & Co. These views are fully sustained by principles declared. *McClaskey & others* v. *O'Brien,* 16 W. Va. 790; *Snyder* v. *Martin,* 17 W. Va. 276; *Whitehill* v. *Barnett,* 24 W. Va. 142; *Snyder* v. *Bodkin,* 37 W. Va. 355; *McNeil* v. *Miller,* 29 W. Va. 480; *Ball* v. *Setzer,* 33 W. Va. 446; and *Lynn* v. *Collins,* 47 W. Va. 250.

The report of the commissioner ignored these rights of the appellants and deal with lots Nos. 1 and 2 as they have been dealt with in the decree complained of. The appellants, as well as Dowell, Helm & Co., excepted to this part of the report and the court overruled their exceptions. They should have been sustained and a decree pronounced in accordance with the conclusions above stated, directing a sale of lots Nos. 1 and 2 only in the event that the surplus proceeds of the property already sold should be insufficient to satisfy the judgment in favor of Dowell, Helm & Co. and the others having priority over it on the property sold, namely, the judgments in favor of the Citizens Bank of Weston for $178.30, Burk and Garrett for $86.44, Citizens Bank of Weston for $184.50 and the Collins Company for $52.76.

This is subject to one qualification.   The Dowell, Helm & Co. judgment is against McComas Murphy only, binding only his interest in lot No. 1.   That lot was conveyed to McComas Murphy and Annie L. Murphy.   The judgment constituted no lien, therefore, on the one-half thereof which belonged, at the rendition of it, to Annie L. Murphy.   Hence, only an undivided half thereof should be sold to satisfy it.   There was no exception to the commissioner's report, in so far as it found that McComas Murphy had been the owner of lot No. 1.   This, however, was an error apparent upon the face of the record.   That lot had been proceeded against in the suit instituted by Haymond, administrator, as the property of both husband and wife, and conditionally decreed to be sold as such.   Failure to except for an error apparent upon the record or the face of the report itself, does not constitute a waiver thereof.   *Gardner* v. *Gardner,* 47 W. Va. 368; *State* v. *King,* 47 W. Va. 437; *Gay* v. *Lockridge,* 43 W. Va. 267; *Kester* v. *Lyon,* 40 W. Va. 16.

It is said the legal title to lots Nos. 1 and 2 was outstanding and no decree of sale should have been made for that reason. The commissioner reported that these lots had been conveyed to McComas Murphy and wife and McComas Murphy and Coberly, respectively, who were all parties, and there was no exception to that finding.   The argument of outstanding title is based on the absence of deeds from the record showing the conveyance.   We think failure to except on this ground constitutes a waiver of the finding or an acquiescence therein.   In fact, the appellants themselves claim under Murphy and wife.

For the reasons stated, the decree complained of, in so far as it makes lots Nos. 1 and 2 liable, by subrogation or otherwise, for judgments other than that of Dowell, Helm & Co., or for it, except in so far as it shall remain unsatisfied, after applying thereon, the surplus proceeds of the sale of the unaliened property of the judgment debtor, after satisfaction of liens thereon prior to it, and more than an undivided half of said lot No. 1 liable for said judgment, in any event; and said lot No. 1 liable, as aforesaid, for the amount due under the vendor's lien in favor of Hyer and Stalnaker, must be reversed, the exceptions of the appellants and Dowell, Helm & Co. to the commissioner's report sustained, and the cause remanded for further proceedings in

accordance with the principles and conclusions herein stated and the rules and principles governing courts of equity.

*Reversed and Remanded.*