236

SANBORN, McDUFFEE COMPANY & a.

*v.*

F. CLYDE KEEFE, *Receiver, & a.*

*Conrad E. Snow*, for the petitioners.

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for the defendant Keefe.

*Cooper & Hall*, for the interveners.

PAGE, J. The receiver relies upon two grounds which, he claims, ·defeat the authority of the court to order a marshaling of the securities. The first is that the resort to marshaling would defeat his statutory rights. The second (which the interveners join in urging) is that marshaling may not be invoked to the injury of third persons.

(1) Upon the first point the receiver adduces as authority *Haymond* v. *Murphy*, 65 W. Va. 616, 619. "The principle of marshaling assets cannot be invoked or applied so as to defeat statutory rights." Two statutes were involved in that case. One provided that no judgment of a justice of the peace should constitute a lien until it was docketed. The other referred to real estate, subject to the lien of a judgment, which is sold in lots to two or more successive purchasers for value, and prescribed the order in which the several parcels should be applied in satisfaction of the judgment. The one statute defined a lien; the other prescribed a statutory rule for marshaling. Neither, it was held, could be contravened by an order for marshaling.

The statute invoked here (P. L., c. 340, s. 10) provides that "Any person who holds a note secured by a mortgage, or partially secured by a mortgage, shall have the right to bring suit upon the note without losing his security upon the mortgaged property, and a suit upon the note and a suit to foreclose the mortgage may be maintained at the same time." The statute merely declares the remedial rights at common law. *Colby* v. *McClintock*, 68 N. H. 176; *McKeen* v. *Cook*, 73 N. H. 410. It does not define a lien; it does not prescribe a rule of marshaling; it does not amend or abrogate the equitable rule of marshaling. The ruling of the court does not deprive the receiver of his concurrent remedies, but merely determines the order in which, consistent with equitable rules, the receiver may have recourse to

the funds reached by the two remedies. The case, in this regard, is no different in principle from any case where one creditor may have recourse to two funds more than ample for his full satisfaction, while a junior creditor has recourse to but one fund, which will prove inadequate for his payment if the senior creditor has primary recourse to it. The statute in terms confirms the legal right of the receiver to resort to two funds. Thus is created the situation in which the junior creditor, having but one recourse, may pray for an order of marshaling. *Kidder & Co.* v. *Page*, 48 N. H. 380, 383.

(2) While it is true that marshaling will not be enforced to the injury of innocent third persons, this rule "does not apply to circumstances in which the third person injuriously affected has an inferior right or equity." 2 Story, Eq. Jur. (14th *ed.*), *s.* 870. The only third persons who are before us are the interveners, the Strafford-York Gas Company and the Joseph P. Manning Company. Their attachments on the mortgaged property were made after the petitioners made their attachments on the insurance fund. The Strafford-York Gas Company's attachment on the insurance fund, being junior to those of the petitioner on the same fund, clearly gives that intervener no standing as an innocent third party. But it is asserted that the equities of the intervenors' real estate liens, though acquired at a date later than that of the petitioners' liens on the insurance funds, are not inferior to the latter; that the petitioners have no priority of equity by which the interveners may be ousted of the benefit of their real estate attachments; that the equities of the interveners had attached prior to the filing of this bill in equity, and that in consequence they are to be treated at least as equal to those of the petitioners.

Upon the facts found, the petitioners have a lien upon the insurance fund, while the receiver has a prior lien on that and one also on the real estate. Were the interveners not involved, the plaintiff could clearly force the receiver to exhaust the real estate first. On the other hand, the interveners have liens on the real estate, while the receiver has a prior lien thereon and liens on the insurance funds. Were the petitioners not involved, the interveners clearly could force Keefe to exhaust the insurance funds first. Which has the superior equitable right, if either? The equities of both the petitioners and the interveners, taken independently of each other, seem to lack nothing of perfection. Under the circumstances, the receiver may not be permitted an arbitrary choice and by first resorting to one fund or the other, disappoint at will either group as he prefers. *Her-*

*bert* v. *Association*, 17 N. J. Eq. 497, 501. If either group has a superior equity, it must be respected. If the equities of both are equal, some basis of distributing the assets must be found which will leave the losses of the two groups in equitable balance. Therefore so much of the order of the court must be sustained as permits the appointment of a receiver to turn the funds into cash and hold them for distribution in accordance with further decrees to be made.

The remaining question is whether the court was in error in ruling further that the proceeds of the real estate should in their entirety be applied to the claim of the receiver. The question is one of some difficulty, and the authorities are far from harmonious. The rule in some jurisdictions, perhaps the majority, is that the right of marshaling is determined by the situation existing when the claimant begins proceedings to have the funds marshaled. Under this rule, if the junior lienholder upon one of the funds on which the claimant has no lien acquired his lien prior to the beginning of the proceeding, the junior lienholder has rights equal, if not superior, to those of the claimant. *Webb* v. *Hunt*, 2 Ind. Ter. 612.

In this state, however, the rule has been understood to be that the right of marshaling depends upon the situation existing when the junior lienholder has notice of the conveyance under which the claimant asserts a right to have the assets marshaled. *Staniels* v. *Whitcher*, 73 N. H. 152; *Brown* v. *Simons*, 44 N. H. 475; *Gage* v. *McGregor*, 61 N. H. 47; *Mahagan* v. *Mead*, 63 N. H. 570. Upon analysis, it appears that the two principal factors to be considered are priority in time and our statute of enrollments.

Applying the test of priority of time, it is clear that the petitioners have an advantage in the fact that their liens on the insurance fund antedate the liens of the interveners upon the real estate. The equity of the petitioners to marshal as against the receiver arose prior to the acquisition by the interveners of their lien on the real estate. If the factor of time alone be considered, the interveners can be given nothing. The interveners can claim no superiority because they are purchasers for value. Other things being equal, it is proper to apply the maxim *qui prior est in tempore, potior est in jure.* *Brown* v. *Simons*, *supra*, 479.

There remains for discussion "the spirit of our statute of enrollments, which is designed for the security of subsequent purchasers and creditors, to give notice of all conveyances of any estate in lands, whether legal or equitable." *Brown* v. *Simons*, *supra*. One who places an attachment lien upon real estate has the right to rely upon

the state of the record as defining his rights unless he has actual notice of unrecorded interests. *Dow* v. *Sayward,* 14 N. H. 9, 15; *Stowe* v. *Meserve,* 13 N. H. 46, 49, 50. If the attachment be lawful, title to the property obtained by a levy of execution based upon the attachment is good as against incumbrances or notice of equities intervening between the attachment and the execution. *Stowe* v. *Meserve, supra; Buzzell* v. *Hardy,* 58 N. H. 331. The status of the interveners is to be determined by their notice at the time their attachments were made. They all had constructive notice of the mortgage to the bank. What, if any, knowledge any of them had of the attachments of the bank and the petitioners upon the insurance funds does not appear.

But even if none of the interveners had notice of the equitable rights of the petitioners to force the receiver to pursue the mortgaged land first, all of the interveners were bound by their notice of the mortgage. They were put upon inquiry as to rights of the bank to realize upon the real estate. *Brown* v. *Simons, supra,* 480, 481. Inquiry would have disclosed the fact that the exercise of those rights by the receiver would have exhausted the land and left nothing for the interveners. They are in no position, therefore, to complain if the plaintiffs, by virtue of their prior equities, are permitted to force the receiver to exercise the rights of the bank in the land. The purpose of the statute of enrollments will be fully accomplished if those rights are enforced as they appear in the record. It is understood that the ruling of the trial court requires that the receiver shall take recourse to the insurance fund of $705.76, as well as to the real estate, before he participates in the fund of $2,588.71.

*Exceptions overruled.*

All concurred.