VANDEVER INVESTMENT COMPANY,
INC., et al., Appellees,

v.

The H. E. LEONHARDT LUMBER COM-
PANY, Appellant.

VANDEVER INVESTMENT COMPANY,
INC., and Sam Caldwell, Petitioners,

v.

H. E. LEONHARDT LUMBER COMPANY,
Bruce Company, Inc., an Arkansas
corporation, Respondents.

Nos. 43718, 455188.

Supreme Court of Oklahoma.

Sept. 26, 1972.

Rehearing Denied Nov. 21, 1972.

John D. Boydston, Jr., Eufaula, James J. Conrad, Muskogee, for appellees and petitioners.

Green & James, Oklahoma City, for appellant and respondents.

IRWIN, Justice.

These two proceedings involve the doctrine of marshaling of securities to satisfy the lien claims of different creditors. The Haskell County case was tried first and the trial court denied Leonhardt Lumber Company's application to marshal securities. The McIntosh case was then tried and the trial court in effect granted Leonhardt's application for the marshaling of securities. The primary issue to be resolved is identical in both proceedings and for all practical purposes the parties are the same and the cases are consolidated.

The First Fidelity Company had paramount liens upon two tracts of land, one tract being located in Haskell County and the other tract being located in McIntosh County. The liens on the two tracts secured the same note and First Fidelity had the right to seek payment of its debt by foreclosure proceedings against either or both tracts. Both tracts were subject to subordinate liens in favor of Vandever Investment Company, Sam Caldwell and Dale V. Dalton. The priority of these liens as between these lien claimants is not in issue.

Leonhardt Lumber Company had a lien only upon the Haskell County property which was subordinate to the lien of First Fidelity. Although the trial court of Haskell County decreed that Leonhardt's lien and the liens of Vandever Investment, Caldwell and Dalton were co-equal in priority upon the Haskell County property, our decision herein holds Leonhardt's lien upon the Haskell County property was superior to those liens.

The primary issue presented to the Haskell County Court was whether Leonhardt was entitled to have First Fidelity to first seek payment of its debt from the McIntosh County property before proceeding against the Haskell County property. Another issue was whether Leonhardt's lien upon the Haskell County property was superior to the liens of Vandever Investment, Caldwell and Dalton or were such liens co-equal in priority.

The trial court in the Haskell County case determined that Leonhardt, who had a lien only upon the Haskell County property, was not entitled to have First Fidelity first seek payment of its debt from the McIntosh County property and denied Leonhardt's application for marshaling of securities. It also determined that Leonhardt's lien and the liens of Vandever Investment, Caldwell and Dalton were co-equal in priority and entitled to a pro-rata distribution of the surplus funds.

Leonhardt appealed and in Case No. 43,718, challenges the correctness of the Haskell County District Court's judgment.

After the proceedings in the Haskell County case had been concluded, proceedings in McIntosh County were commenced. In that case, Leonhardt's application for subrogation to the rights of First Fidelity was granted by the McIntosh County Court by an interlocutory order after that Court determined that under the subrogation principle of marshaling assets, Leonhardt was entitled to be subrogated to the priority rights of First Fidelity in the McIntosh County property. First Fidelity had satisfied its claim in the Haskell County proceedings, and filed a disclaimer in the McIntosh proceedings.

In the McIntosh County case, No. 45,188, Vandever Investment and Caldwell filed their petition for certiorari for review of the certified interlocutory order of the McIntosh County District Court.

A brief summary of the record will clarify the facts and issues. J. O. Barnett and others owned two tracts of land. One tract was located in Haskell County and one tract was located in McIntosh County. On July 12, 1965, the owners executed two separate mortgages to First Fidelity, one covering the Haskell County property and one covering the McIntosh County property. Both mortgages secured the same note. It is conceded that First Fidelity had a paramount lien on both tracts of land and had the right of foreclosure against either or both of such tracts.

On July 18, 1965, Leonhardt furnished materials to the owners for the construction of improvements on the Haskell County property and duly perfected its materialmen's lien. Leonhardt furnished no materials for the McIntosh County property and its lien did not cover the McIntosh County property.

Thereafter, the owners executed different notes in favor of Vandever Investment Company, Caldwell and Dalton. As security for each of these notes, the owners executed to each of these creditors separate mortgages, one covering the Haskell County property and one covering the McIntosh County property.

The rights of J. O. Barnett and others, owners of the properties, are not in issue. Also, Bruce Company, Inc., was made a respondent in Case No. 45,188, but its rights were not placed in controversy in these proceedings.

We will first consider the correctness of the Haskell County judgment which determined that Leonhardt's materialmen's lien on the Haskell County property had co-equal priority with the mortgage liens of Vandever Investment, Caldwell and Dalton.

The record reflects that Leonhardt furnished materials and supplies to the owners and delivered them to the property and construction was commenced prior to the time the mortgage liens attached. Under these circumstances, Leonhardt's materialmen's lien was superior to the subsequent mortgage liens of Vandever Investment, Caldwell and Dalton. 42 O.S.1971, § 141; First National Bank of Bethany v. Eagan, Okl., 263 P.2d 157; and American-First Title & Trust Company v. Ewing, Okl., 403 P.2d 488.

Vandever Investment, et al., cite no authority which holds that their subsequent mortgage liens have co-equal priority with Leonhardt's superior materialmen's lien. They contend however, that since the Haskell County property was not of sufficient value to satisfy all the claims, that after the prior claim of First Fidelity was paid, that Leonhardt's claim and their claims should have co-equal priority and be paid on a pro rata basis from the balance. To sustain this contention, they cite the publisher's headnote No. 5, in Local Federal Savings & Loan Ass'n. v. Davidson and Case Lumber Co., 208 Okl. 155, 255 P.2d 248, which states:

"Where proceeds from sale of realty, upon which liens had attached for mortgage and materials furnished were insufficient to pay all claimants, the trial court should have ordered liens for materials paid in proportion to amount due each, and if funds in hands of receivers were insufficient to pay lien claimants in full, claims should have been paid co-equal upon pro rata basis."

An examination of the above case discloses the Court determined that materialmen should have co-equal priority and share pro rata in the funds remaining after payment of the superior mortgage, but that case does not stand for the proposition that where a materialmen's lien attaches, prior to the time a mortgage lien attaches, that if there are insufficient funds to satisfy both claims after payment of a paramount lien, the materialmen's lien and the mortgage lien should have co-equal priority and be paid on a pro rata basis.

We hold that Haskell County Court erred in holding that Leonhardt's materialmen's lien and the mortgage liens of Vandever Investment, Caldwell and Dalton, were co-equal and should be paid on a pro rata basis from the funds remaining from the Haskell County property. Leonhardt's materialmen's lien had priority over the subsequent mortgage liens.

We will now consider the doctrine of marshaling of securities to satisfy the lien claims of the different lienors.

42 O.S.1971, § 17, provides:

"Where one has a lien upon several things, and other persons have subordinate liens upon or interests in, some but not all of the same things, the person having the prior lien, if he can do so without the risk of loss to himself, *or injustice to other persons*, must resort to the property in the following order, on the demand of any party interested:

"1. To the things upon which he has an exclusive lien.

"2. To the things which are subject to the fewest subordinate liens.

"3. In like manner inversely to the number of subordinate liens upon the same thing; and, * * *." (emphasis ours)

There is no showing whatsoever that if First Fidelity were required to marshal securities to satisfy its claim that it could not do so without the risk of loss. However,

in what manner may First Fidelity marshal securities without an "injustice to other persons"?

Under the above statute, Leonhardt would have been entitled to have First Fidelity to first resort to the McIntosh County property before proceeding against the Haskell County property if only their interests had been involved. Burke v. Marshall, 183 Okl. 505, 83 P.2d 395. However, Vandever Investment, Caldwell and Dalton each had a lien upon the McIntosh County property and Leonhardt had no lien. If First Fidelity first sought payment of its debt from the McIntosh County property, an injustice would be done to the rights of Vandever Investment, Caldwell and Dalton with Leonhardt reaping the benefits. By the same token, unless Leonhardt has some rights to the marshaling of securities, First Fidelity has in effect been permitted to make an arbitrary choice from which property it would first seek payment of its debt. It has chosen the property in Haskell County and if First Fidelity first satisfies its debt from this property without a marshaling of securities, an injustice will be done to the rights of Leonhardt with Vandever Investment, Caldwell and Dalton reaping the benefits. What is the solution?

106 A.L.R. 1102, et seq., contains an annotation on the doctrine of marshaling of assets where two funds covered by a paramount lien are subject to subordinate liens in favor of different persons. Two rules are discussed, the first being set forth at page 1103, which states:

"The greater number of cases, and what seems to be the weight of authority, favor the rule that, where a paramount lienor may seek payment of his debt from either or both of two funds, and each fund is subject to a subordinate lien held by different creditors, the subordinate lienor whose lien is prior in time to the other, who took his lien with notice of the existing situation, may have the securities marshaled in his favor and compel the primary creditor to seek satisfaction first from the fund not subject to such subordinate mortgage. This rule is founded upon the two principles that marshaling of securities will be permitted, although it operates to the injury of a third party, where the third party has an equity inferior to the one asking the remedy; and that, as between equal equities, the prior in time prevails."

The case of Oppenheimer v. Walker (1874), 3 Hun (N.Y.) 30, 5 Thomp. & Co. 325, is cited under this rule. In Oppenheimer, defendant executed a mortgage on three lots to plaintiff, and subsequently another mortgage on two of the lots to a third person. Later a mechanic's lien was filed against the buildings on the three lots and they were sold under the first mortgage and this mortgage was satisfied. The three lots were of equal value. In a contest as to the surplus funds, it was held that, as the second mortgagee was entitled to have the prior mortgage first satisfied out of the proceeds of the lot not covered by his mortgage, this equity was not impaired by the subsequent filing of the mechanic's lien; and the surplus should be regarded as arising from the sale of the two lots covered by the second mortgage, which should be paid therefrom in preference to the mechanic's lien.

Assuming the Haskell and McIntosh County properties are of equal value, if this line of reasoning were followed in the case at bar, it would appear that since Leonhardt's lien is prior in time to the liens of Vandever Investment, Caldwell and Dalton, Leonhardt would be entitled to have First Fidelity seek payment of its debt from the properties in both Haskell and McIntosh Counties and Leonhardt would have preference to the surplus over the rights of Vandever Investment, Caldwell and Dalton. This line of reasoning seems inconsistent with 42 O.S.1971, § 17, which does not authorize the marshaling of securities if it would do an "injustice to other persons." Leonhardt would be reaping the benefits to the detriment of Vandever Investment, Caldwell and Dalton.

The second rule, set forth on page 1109 of 106 A.L.R., states:

"The rule in England (in regard to mortgages, at least), and that followed in many cases in this country, is that, where a paramount lienor may seek payment of his debt from either or both of two funds, each fund being subject to subordinate liens in favor of different creditors, the primary lien will not be thrown upon one fund to the prejudice of the other, and each junior lienor is bound to bear the burden of the first lien in due proportion to the value of the fund to which he has claim, the surplus proceeds of each estate being applied in payment of the respective encumbrances thereon. This rule is likewise founded upon two principles, viz., that equity regards all creditors alike, and that marshaling of securities will not be compelled when it would operate to the injury of one over whom the one asking the remedy has no superior equity."

Barnes v. Racster (1842) 1 Younge & C.Ch.Cas. 401, 62 Eng.Reprint, 944, is cited on page 1111 of the 106 A.L.R. Annotation as being the case which is generally regarded as lying at the basis for this rule. In Barnes the defendant mortgagor owned two tracts, Foxhall and No. 32; in 1792 mortgaged Foxhall to Barnes; in 1795 mortgaged Foxhall to Hartwright; in 1800, mortgaged Foxhall and No. 32 to Barnes; and in 1804, mortgaged Foxhall and No. 32 to Williams. The issue presented was whether Hartwright could, as against Williams, compel Barnes, the first mortgagee on both tracts to first satisfy his mortgage from No. 32, thereby leaving Hartwright with the first mortgage on Foxhall.

The English Court held that Barnes must satisfy his claim against Foxhall and No. 32, proportionately or ratably, according to their respective values; and that the surplus from Foxhall would inure to the benefit of Hartwright; and the surplus from No. 32, would inure to the benefit of Williams.

If the Barnes rule were followed in the case at bar, First Fidelity would satisfy its claim against the Haskell County property and the McIntosh County property, proportionately or ratably, according to their respective values; the surplus from the Haskell County property would first inure to the benefit of Leonhardt; and the surplus from the McIntosh County property would first inure to the benefit of Vandever Investment, Caldwell and Dalton.

The Barnes case was cited with approval and the manner in which marshaling of securities as therein ordered was followed by the Court of Appeals of Indian Territory in Webb v. Hunt (1899) 2 Ind.T. 612, 53 S.W. 437. In fact the Court said the cases were almost identical. It is stated in Webb that: "Marshaling is a pure equity, and will not be enforced to the prejudice of another man's rights. * * * Nor can the rights of third parties be interfered with in order to give a junior creditor the benefit of this doctrine;" and that "the equity to marshal assets is not one which fastens itself upon the situation at the time the successive securities are taken, but, on the contrary, is one to be determined at the time the marshaling [of assets] is invoked. The equity can only become a fixed right by taking proper steps to have it enforced, and until this is done it is subject to displacement and defeat by subsequently acquired liens upon the funds."

The time for determining the rights of lienors when the doctrine of marshaling of securities invoked, appears to constitute one of the differences between the rule of marshaling of securities set forth at page 1103 of 106 A.L.R. and the rule set forth at 1109 of that annotation. Sanborn, McDuffee Co. v. Keefe, 88 N.H. 236, 187 A. 97, 106 A.L.R. 1097, a New Hampshire case, was cited as sustaining at least, in part, the rule set forth on page 1103. The New Hampshire Court said that the rule in some jurisdictions, perhaps the majority, is that the right of marshaling is determined by the situation existing when the claimant begins proceedings to have the funds marshaled; and "Under this rule, if the junior

lienholder upon one of the funds on which the claimant has no lien acquire[s] his lien prior to the beginning of the proceeding, the junior lienholder has rights equal, if not superior, to those of the claimant." The Indian Territory case of Webb v. Hunt, supra, was cited as authority. The Court then said: "In this state, however, the rule has been understood to be that the right of marshaling depends upon the situation existing when the junior lienholder has notice of the conveyance under which the claimant asserts a right to have the assets marshaled."

█ We hold that where a paramount lien claimant may seek payment of his debt from either or both of two securities without the risk of loss to himself, or doing an injustice to other persons, and both securities are subject to subordinate liens in favor of different lien claimants, the paramount lien claimant may not arbitrarily select the security from which he will first seek payment of his debt, but the subordinate lien claimants are entitled to have the paramount lien claimant satisfy his debt from both securities, proportionately or ratably, according to the respective values of the securities.

█ We also hold that the right of marshaling of securities is to be determined by the situation existing when the right of marshaling is sought to be invoked and not by the situation existing when the securities were taken.

█ In applying the above rules to these proceedings we find that when Leonhardt sought the marshaling of securities, First Fidelity had a paramount lien upon the properties in both Haskell and McIntosh Counties, and it could seek payment of its debt from either or both of the properties without risk of loss. Since First Fidelity could not arbitrarily select the property from which to satisfy its debt, the subordinate liens claimants were entitled to have First Fidelity satisfy its debt from both properties, proportionately or ratably, according to the respective values of the properties.

Leonhardt's lien upon the Haskell County property is subordinate to the lien of First Fidelity and superior to the liens of Vandever Investment, Caldwell and Dalton. Leonhardt's claim has preference over the claims of Vandever Investment, Caldwell and Dalton, to any surplus remaining from the Haskell County property after the Haskell County property shares its proportionate or pro rata share of Fidelity's claim. In this connection, we note that there is a labor lien in the sum of $238.05 which is subordinate to the claim of First Fidelity but has priority over Leonhardt's claim.

The liens of Vandever Investment, Caldwell and Dalton upon the McIntosh County property are subordinate only to the lien of First Fidelity. These lien claimants have preference over the claim of Leonhardt to any surplus remaining from the McIntosh County property after the McIntosh County property shares its proportionate or pro rata share of First Fidelity's claim.

How will the respective values of the properties for the purpose of marshaling assets be determined? The record in the Haskell County case discloses that the Haskell County property has been sold and the sale has been confirmed. The amount of the proceeds available for payment of court costs, repayment of insurance premiums on the property, payment of lien claims, etc., is $22,902.50. Before First Fidelity is entitled to any of the proceeds, $5,297.08 must be paid for costs and other claims. Subtracting this $5,297.08 from the $22,902.50 leaves $17,605.42. Therefore, in determining the proportionate or ratable share that the Haskell County property would contribute to the satisfaction of First Fidelity's lien, its interest due, and its attorneys' fee, $17,605.42 would be considered the value of the Haskell County property for the purpose of marshaling assets.

Until further proceedings are had in the McIntosh County case, the value of the McIntosh County property for the purpose of marshaling assets cannot be determined.

After the value of the McIntosh County property for the purpose of marshaling of assets has been determined, in the same manner that we determined the value of the Haskell County property, application of the simple rules of arithmetic will disclose the proportionate or ratable share that the Haskell and McIntosh County properties will each contribute to the satisfaction of First Fidelity's lien, its interest due, and its attorneys' fee.

Judgment of the District Court of Haskell County in Case No. 43,718 reversed; and Certified Interlocutory Order of the District Court of McIntosh County in Case No. 45,188 reversed.

BERRY, C. J., WILLIAMS, JACKSON, HODGES, LAVENDER and BARNES, JJ., and SIMMS, Special Justice, concur.

Justice McINERNEY having certified his disqualification in this case, ROBERT D. SIMMS was appointed Special Justice in his stead.